### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAKIA BEASLEY, RICHARD HENDERSON, on behalf of themselves and all others similarly situated,<br><br>c/o Covington & Burling LLP<br>850 10th Street NW<br>Washington, DC 20001<br><br>                              Plaintiffs,<br><br>     v.<br><br>CARLOS DEL TORO, SECRETARY OF THE NAVY, UNITED STATES OF AMERICA, in his official capacity, and UNITED STATES DEPARTMENT OF THE NAVY<br><br>1000 Navy Pentagon<br>Washington, DC 20350<br>                         Defendants. | Civil Action No. 1:22-cv-00667<br><br><br>**CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## INTRODUCTION

1. Every year, thousands of Service members[1] in the United States military are injured while serving in the line of duty. While many of these individuals recover, others do not, and as a result, they are no longer able to serve in the military. In recognition of their sacrifice for their country, Congress has instructed that Service members who cannot continue their military service

---

[1] The Service branches each contain an Active Component and a Reserve Component. As used throughout the Complaint, the term "Service members" refers to any member of the U.S. military, including members in either the Active or Reserve Component. References to "Reservists" refer solely to members of the Reserve Component. The Reserve Component "provide[s] trained units and qualified persons available for active duty persons . . . whenever more units and persons are needed." 10 U.S.C. § 10102. Reservists, therefore, are not by default on active duty, but can be called to active duty when so ordered.

because of injuries sustained in the line of duty are entitled to a medical retirement or medical separation, both of which offer certain benefits. *See* 10 U.S.C. § 1201, *et. seq*.

2.      In order to fulfill this directive from Congress, the Department of Defense ("DoD") created the Disability Evaluation System, or the DES, to determine whether Service members can continue their military service.  If a Service member can no longer serve because of injuries incurred or aggravated in the line of duty, the DES provides a pathway for those Service members to obtain the benefits to which they are statutorily entitled.  Referral and processing through this "duty-related" path is the *only* way for a disabled Service member who was injured in the line of duty to receive a medical retirement or medical separation, along with the resulting disability benefits.

3.      Service members whose injuries were not incurred in the line of duty are not eligible for the duty-related path.  Instead, they proceed through the DES's "non-duty-related" path.  Unlike the duty-related path, the non-duty-related path is not intended for Service members who have injuries that were incurred or aggravated in the line of duty, and can never result in a medical retirement or medical separation.  Rather, the purpose of the non-duty-related path is simply to assesses whether a member is physically qualified to continue military service and to discharge any member found to be not physically qualified for further service.

4.      The DES is governed by Department of Defense Instruction ("DoDI") 1332.18, which is binding on all Service branches.[2]  Under DoDI 1332.18, each branch is *required* to refer all eligible Service members into the duty-related path of the DES, though the Services have some

---

[2] DoDI 1332.18, including all of its Enclosures and Appendices, is attached to this Complaint as Exhibit A.

discretion as to how to satisfy this requirement. *See* DoDI 1332.18, App. 1 to Enclosure 3, §§ 2 & 3(a).

5.    Although DoDI 1332.18 sets the eligibility criteria for mandatory referral into the DES's duty-related path, it does not dictate a singular method for how Service branches should evaluate these criteria. Instead, each branch's implementing regulations designate various mechanisms that can be used to identify which Service members must be referred for duty-related DES processing. For the United States Department of the Navy ("Navy" or "the Navy") and United States Marine Corps ("Marine Corps" or "the Marine Corps"), these mechanisms include conducting investigations into the circumstances of an injury, issuing formal determinations that resolve whether an injury was incurred or aggravated in the line of duty, or presuming, based on the Service member's duty status at the time of injury, that an injury was incurred or aggravated in the line of duty.

6.    Regardless of what process the Service branches use to evaluate DES eligibility, they must ensure that they refer all eligible Service members into the duty-related path. Naturally, this means the Service branches must, at a minimum, identify eligible Service members by making *some* decision as to whether their injuries satisfy the eligibility criteria in DoDI 1332.18 for a duty-related referral.

7.    Unfortunately for Plaintiffs LaKia Beasley and Richard Henderson and the members of the Class they represent, the Navy and the Marine Corps are refusing to refer eligible Reservists who are not presently on active duty orders into the duty-related path. Instead, even when those Reservists satisfy the eligibility criteria in DoDI 1332.18 for referral, the Navy and the Marine Corps will not refer them into the duty-related path unless they already have a "Line of Duty Benefits Letter."

8.      In doing so, the Navy does not appear to consider whether any Reservist not on active duty orders actually satisfies the eligibility criteria in DoDI 1332.18.  Rather, the Navy simply uses the absence of a Line of Duty Benefits Letter as a *de facto* determination that such a Reservist is ineligible for referral to the DES's duty-related path—and therefore ineligible for a medical separation or retirement and the accompanying benefits.  This improperly places the burden on Reservists, not the Navy, to ensure that Reservists are processed correctly through the DES.  Compounding the problem, the Navy does not have a process for Reservists to obtain these Line of Duty Benefits Letters, nor does the Navy appear to consider whether a Reservist should receive such a letter.  In other words, obtaining these letters appears entirely arbitrary.

9.      Plaintiffs, like all other Class members, incurred or aggravated an injury[3] while in the Navy (or the Marine Corps, which is part of the United States Department of the Navy) that eventually rendered them unfit for continued military service in the Reserves.  Without considering whether they satisfied the referral criteria in DoDI 1332.18 for duty-related processing through DES, the Navy processed each Plaintiff and Class member's separation from military service through the Navy's "non-duty-related" Medical Retention Review ("MRR") process because they did not have a Line of Duty Benefits Letter (for which, as noted above, there is no process to obtain).  The Navy's use of the MRR process means that Plaintiffs and Class members were separated without any assessment of whether they were eligible for duty-related DES processing, eliminating the one path for them to obtain disability benefits.  Further, there is no indication that the Navy will change its process for Reservists, meaning future Sailors and Marines injured in the

---

[3] As used throughout this Complaint, the terms "injury" and "injuries" refer to both physical health conditions and mental health ailments.

line of duty will also be shut out from receiving disability benefits as well.  Plaintiffs and Class members have earned, and deserve, better.

10.    This lawsuit is brought to change the Navy's unlawful policy and practice of separating Plaintiffs and Class members from the military via the MRR process without assessing their eligibility for, and referring them to, the duty-related path of the DES to obtain disability benefits.  The Navy's current process and actions are arbitrary, capricious, and in violation of the controlling statutes and regulations.

11.    Plaintiffs and the putative Class seek declaratory and injunctive relief to set aside the Navy's separation of all Class members through the MRR process without considering their eligibility for duty-related processing, to declare unlawful the Navy's failure to refer eligible Service members into the DES's duty-related path as required by law and binding DoD regulations, and to order the Navy to properly process current and future Class members through the DES.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331 because this case raises federal questions under the laws governing the United States military and the Administrative Procedure Act.  10 U.S.C. §§ 1201(b), 1203(b); 5 U.S.C. §§ 701–706.

13.    Plaintiffs seek exclusively declaratory and other equitable relief.  *See* 5 U.S.C. § 702.

14.    An actual, justiciable controversy now exists between the Class and the Defendants, and the requested relief is proper under 5 U.S.C. §§ 701–706.

15.    The Navy's separation of Plaintiffs and the putative Class members via the MRR process constitutes final agency action for which there is no other adequate remedy in a court. *See* 5 U.S.C. § 704.

16.    This Court is the appropriate venue pursuant to 28 U.S.C. § 1391(e) because the Secretary of the Navy is an officer of the United States and because a substantial part of the acts or omissions giving rise to this lawsuit took place in the District of Columbia. Venue is also proper under 5 U.S.C. § 703 because this is a court of competent jurisdiction.

17.    In accordance with 28 U.S.C. § 2401, this action is brought within six years of the claims arising.

## **PARTIES**

18.    The Defendants are the Secretary of the United States Department of the Navy, and the United States Department of the Navy, an agency of the United States government. The Department of the Navy contains both the Navy and the Marine Corps, though they are independent service branches. References in this complaint to the Navy alone encompass both the Navy and the Marine Corps.

19.    Plaintiff LaKia Beasley is a veteran of the United States Navy who served in the Active Component from May 2006 until November 2016 and in the Reserves from November 2016 to May 2021, achieving the rank of Information Systems Technician Chief Petty Officer. In 2013, while on active duty, Ms. Beasley deployed to Afghanistan with SEAL Team Four. During her deployment, Ms. Beasley's unit suffered many losses: two of her close friends were killed, and her Commanding Officer committed suicide. After Ms. Beasley returned home, she began experiencing depression, anxiety, hypervigilance, and other mental health issues. She was first diagnosed with anxiety and adjustment disorders, but ultimately began receiving treatment for

Post-traumatic Stress Disorder ("PTSD") before her Active Component enlistment ended in 2016. After her enlistment ended, Ms. Beasley joined the Navy Reserve and was quickly, and improperly, referred by the Navy into the MRR process. She was found not physically qualified for continued military service, and was separated from the Reserves in May 2021 without a medical retirement, despite the fact that the medical conditions that led to her separation were incurred on active duty. At no point prior to her separation did Ms. Beasley receive a Line of Duty Benefits Letter, nor did the Navy make any determination that she was ineligible to receive such a Letter. Further, Ms. Beasley was improperly referred into the MRR process in part *because* she never received a Line of Duty Benefits Letter.

20.     Plaintiff Richard Henderson enlisted in the Navy Reserve in 2005 and eventually reached the rank of Builder Petty Officer First Class. In 2014, Mr. Henderson was ordered to active duty and deployed to Afghanistan. During his deployment, Mr. Henderson's base came under rocket fire. While running to his command designated shelter, Mr. Henderson fell, injuring his back, neck, right knee, and right shoulder. Mr. Henderson was medically evacuated back to the United States and remained on active-duty orders while he received treatment for his injuries, including surgeries on his right knee and right shoulder. In 2019, after his active duty orders had terminated, Mr. Henderson was improperly referred into the MRR process. He was then found not physically qualified for continued military service, and was separated from the Reserves in November 2020 without a medical retirement, despite the fact that he incurred the medical conditions that led to his separation while ordered to active duty. At no point prior to his separation did Mr. Henderson receive a Line of Duty Benefits Letter, nor did the Navy make any determination that he was ineligible to receive such a Letter. Further, Mr. Henderson was

improperly referred into the MRR process in part *because* he never received a Line of Duty Benefits Letter.

## FACTUAL ALLEGATIONS

### A.    The Military Disability Evaluation System

21.    Title 10, U.S.C., chapter 61, provides the Secretaries of the Military Departments with authority to retire or separate disabled Service members, including Reservists.

22.    The DES was established to provide uniform standards and procedures for evaluating a Service member's medical conditions and determining whether a Service member can continue military service.  In general, when a Service member suffers an injury or illness and the ailment may be permanent or otherwise prevent the Service member from performing his or her duties, the DES process is triggered and the Service member's fitness for duty is evaluated.

23.    DoDI 1332.18 governs the DES and prescribes overarching standards and procedures for conducting physical and mental disability evaluations.  Pursuant to DoDI 1332.18, the "standards for all determinations related to disability evaluation will be consistently and equitably applied" to all Service members.  DoDI 1332.18 § 3(c).

24.    Service members are eligible for DES referral when they:

> (1) have one or more medical conditions that may, individually or collectively, prevent the Service member from reasonably performing the duties of their office, grade, rank, or rating including those duties remaining on a Reserve obligation for more than 1 year after diagnosis; (2) have a medical condition that represents an obvious medical risk to the health of the member or to the health or safety of other members; or (3) have a medical condition that imposes unreasonable requirements on the military to maintain or protect the Service member.

DoDI 1332.18, App. 1 to Enclosure 3, § 2(a).  The military medical authorities *must* refer eligible Service members into the DES within one year of their diagnosis.  *Id.* § 2(b); *see also* DoDI

1241.01 § 3(c) ("[Reservists] *will* be referred to the DES when the criteria for referral are met in accordance with DoDI 1332.18." (emphasis added)).

25.    The DES contains both a "duty-related determination" path and a "non-duty-related determination" path.  DoDI 1332.18, App. 1 to Enclosure 3, §§ 3(a), (b).

26.    Service members eligible for the duty-related path include Reservists "who are not on orders to active duty specifying a period of more than 30 days but who incurred or aggravated a medical condition while the member was ordered to active duty for more than 30 days." *Id.* § 3(a)(2).

27.    The purpose of the DES's duty-related path is to compensate Service members for service-incurred or -aggravated injuries that cause or contribute to the termination of a Service member's career.  *See* DoDI 1332.18, App. 2 to Enclosure 3, § 5(a) ("The DES compensates disabilities when they cause or contribute to career termination.").  In other words, the duty-related path enables injured Service members to obtain the disability benefits authorized by 10 U.S.C. § 1201, *et. seq*.

28.    DoDI 1332.18 dictates that Reservists who were injured in the line of duty *must* be referred into the duty-related path of the DES.  This requirement operates like so: DoDI 1332.18 requires the referral of all eligible Service members into the DES.  DoDI 1332.18, App. 1 to Enclosure 3, § 2(b) ("In all cases, competent medical authorities *will* refer into the DES eligible Service members . . . within 1 year of diagnosis." (emphasis added)).  DoDI 1332.18 also designates that Reservists who did not incur or aggravate an injury while ordered to active duty for more than 30 days "will be referred" to the non-duty-related path and explains that Service members who are eligible for the duty-related path "do[] not qualify" for the non-duty-related path. *Id.* § 3(b).  Accordingly, under DoDI 1332.18, Service members eligible for the duty-related path

*must* be referred into that path because their referral into the DES is mandatory and they cannot be referred to the non-duty-related path. *Id.* § 3(a). And as noted above, Reservists who "are not on orders to active duty specifying a period of more than 30 days but who incurred or aggravated a medical condition while the member was ordered to active duty for more than 30 days" are eligible for the duty-related path. *Id.* § 3(a)(2).

29.     The eligibility criteria for a duty-related DES referral are separate and independent of the eligibility criteria for disability-related compensation. *Id.* § 1 ("The Secretary of the Military Department concerned will refer Service members who meet the criteria for disability evaluation regardless of eligibility for disability compensation."). In other words, even if a Service member is not ultimately eligible for disability benefits, the member still must be referred for DES duty-related processing if he or she meets the referral criteria in DoDI 1332.18.

30.     Under the duty-related path of the DES, Service members are first evaluated by a Medical Evaluation Board ("MEB"). The MEB is responsible for reviewing all available medical evidence, including any examinations, and for documenting the Service member's medical status and any limitations on the Service member's ability to serve. DoDI 1332.18, Enclosure 3, § 2(a). If the MEB finds medical conditions "whether singularly, collectively, or through combined effect," that will prevent the Service member from reasonably performing the duties of his or her office, grade, rank, or rating, the MEB will refer that Service member to a Physical Evaluation Board ("PEB"). *Id.* § 2(d).

31.     The PEB is tasked with determining "the fitness of Service members with medical conditions to perform their military duties," and the eligibility of any unfit Service members with duty-related conditions for medical retirement or medical separation. *Id.* § 3(a).

32.     A Service member will be considered "unfit" by the PEB when "due to disability," the Service member "is unable to reasonably perform duties of his or her office, grade, rank, or rating, including those during a remaining period of Reserve obligation." DoDI 1332.18, App. 2 to Enclosure 3, § 2(a).[4]

33.     An informal PEB issues the first set of findings regarding a Service member's fitness. DoDI 1332.18, Enclosure 3, § 3(b). If the member disagrees with those informal findings, he or she can rebut them and request a personal appearance before a formal PEB. *Id.* § 3(c). A hearing before the formal PEB is authorized by federal law, which provides that "[n]o member of the armed forces may be retired or separated for physical disability without a full and fair hearing if he demands it." 10 U.S.C. § 1214. At a minimum, the formal PEB hearing must allow the Service member an opportunity to present evidence. DoDI 1332.18, Enclosure 3, § 3(h)(6).

34.     If a PEB finds that the Service member is unfit for continued military service, then it must assign a disability rating from 0% to 100%, in increments of 10%, to each physical or mental condition found to render the Service member unfit for continued military service. *See id.* § 3(j)(2). Title 10 of the U.S. Code mandates that the service branches follow the Veterans Affairs ("VA") Schedule for Rating Disabilities when assigning a disability rating to each of the physical and mental disabilities found by the PEB to render the Service member unfit for continued service. *See* 10 U.S.C. §§ 1201, 1203, 1216a.

---

[4] The PEB's "fitness" analysis for duty-related injuries examines a Service member's medical conditions both independently and collectively. This means that the PEB assesses whether the combined effects of medical conditions render a Service member unfit, even where each condition standing alone would not. *See* DoDI 1332.18, App. 2 to Enclosure 3, § 4(d); *see also* 10 U.S.C. § 1216a(b) (disability rating determinations made for all medical conditions individually or collectively).

35.    The disability rating determines the type and amount of military benefits to which the Service member is entitled upon discharge.  An unfit Service member with a permanent "disability of at least 30 percent" that was "incurred in the [line of duty] after September 14, 1978" "*will* be retired with disability benefits."  DoDI 1332.18, App. 3 to Enclosure 3, § 2 (emphasis added); *see also* 10 U.S.C. § 1201.  An unfit Service member with a permanent disability of "less than 30 percent" that was "incurred in the [line of duty] after September 14, 1978" "*will* be separated with disability benefits."  DoDI 1332.18, App. 3 to Enclosure 3, § 4 (emphasis added); *see also* 10 U.S.C. § 1203.

36.    Service members who meet the criteria for referral to the DES, but who are not eligible for the duty-related path, proceed through the non-duty-related path.  Unlike the duty-related path, the purpose of the non-duty-related path is *only* to determine the readiness of the Service members.  The non-duty path is not designed to assess whether a Service member is entitled to benefits, but rather to discharge unfit Service members with injuries for which the military assumes no financial responsibility.

37.    Under the non-duty-related path, there is no MEB evaluation.[5]  Instead, a Service member with non-duty related injuries proceeds directly to a PEB for a fitness determination.  If that member is found not physically qualified, he or she will be discharged without a medical retirement or medical separation and will not receive any disability benefits.  *See* DoDI 1332.18, App. 6 to Enclosure 3, § 5(e)(2) (noting that unfit Reservists will be "directed for discharge" when

---

[5] In contrast to the duty-related path, there is also no requirement in the MRR process to consider the combined or collective effect of a Reservist's injuries.  *See* Navy Reserve Personnel Manual 6000-010 § 5(f) (requiring MRR package when any singular "existing medical condition" will "likely prevent the member from safely and effectively fulfilling duty responsibilities").

their medical condition "is non-duty related and it disqualifies the member for retention in the RC").

**B.    The Navy's Flawed Disability Evaluation Process for Reservists**

38.    10 U.S.C. § 1216 directs the Secretary of the Navy to promulgate regulations governing disability retirement and separation determinations.  Likewise, DoDI 1332.18 instructs the military departments to create regulations implementing the requirements of DoDI 1332.18. *See* DoDI 1332.18, Enclosure 2, § 4(b) (instructing the Secretaries of the Military Departments to "[i]mplement the DES in accordance with this instruction").  The Navy has published Instructions ("SECNAVINST") and other regulations governing DES evaluations for both Active and Reserve Component members.  *See, e.g.*, SECNAVINST 1850.4F, *Department of the Navy Disability Evaluation System*.[6]

39.    Federal law and DoDI 1332.18 are binding on the Service branches.  But the Navy's failure to consider eligibility for duty-related DES processing and to refer eligible Reservists into the DES's duty-related path demonstrates that the Navy has not complied with DoDI 1332.18, 10 U.S.C. § 1201, *et. seq*., or its own regulations.

40.    DoDI 1332.18 does not dictate a single process that the Navy must use to evaluate the referral criteria in DoDI 1332.18.  Instead, DoDI 1332.18—together with the Navy's own implementing regulations—identify various mechanisms for assessing whether a Reservist incurred or aggravated an injury in the line of duty and is thus eligible for a duty-related referral.

41.    First, the Navy may initiate a Line of Duty Investigation when a Reservist incurs or aggravates injuries "during a period of duty."  *See* SECNAVINST 1770.5, Enclosure 1, § 11(a);

---

[6] SECNAVINST 1850.4E was in place from April 30, 2002 until June 27, 2019, when it was replaced by SECNAVINST 1850.4F.

*see also* Navy JAGINST 5800.7G, 2-38 (noting that each "injury or disease requiring line of duty/misconduct determinations . . . must be the subject of a preliminary inquiry").[7]  A Line of Duty Investigation is an "investigation to document the official record of the circumstances surrounding an injury, illness, or disease incurred or aggravated on active or inactive duty." SECNAVINST 1770.5, Enclosure 3, § 17.

42.    Second, the Navy may issue a Line of Duty Determination, meaning a determination of "whether an injury or illness was incurred when [a] Service member was in a military duty status" and "[i]f the Service member was not in military duty status, whether it was aggravated by military duty; or whether it was incurred or aggravated due to the Service member's intentional misconduct or willful negligence."  DoDI 1332.18, Glossary.

43.    Third, DoDI 1332.18 sets forth an "in-LOD presumption," which may eliminate the need for a Line of Duty Investigation, or even a Line of Duty Determination, in many cases. Specifically, DoDI 1332.18 requires the Secretaries of the Military Departments to "presume that diseases or injures incurred by Service members on continuous orders to active duty specifying a period of more than 30 days were incurred or aggravated in the [line of duty] unless the disease or injury was noted at the time of entry into service."  DoDI 1332.18, App. 3 to Enclosure 3, § 7(c).[8] This "in-LOD presumption" may be overcome "only when clear and unmistakable evidence indicates the disease or injury existed prior to their current period of military service and was not aggravated by their current period of military service."  *Id.*  Likewise, clear and convincing evidence that a Service member's "intentional misconduct or willful neglect" caused his or her

---

[7] Navy JAGINST 5800.7F was in place from June 26, 2012 until January 15, 2021, when it was replaced by Navy JAGINST 5800.7G.

[8] Congress has codified a similar presumption for veterans seeking disability benefits from the VA.  *See* 38 U.S.C. § 105.

disability would be sufficient to overcome the in-LOD presumption and render that member ineligible for referral into the DES. *See* DoDI 1332.18, App. 1 to Enclosure 3, § 4(a)(5). The Navy has codified the same in-LOD presumption in its Manual of the Judge Advocate General. *See* Navy JAGINST 5800.7G, 2-32 ("An injury or disease suffered by a member of the Naval Service will [] be presumed to have been incurred in the line of duty and not as a result of misconduct, unless contrary findings supported by clear and convincing evidence are made."); *id.* at 2-34 (describing presumption); *see also* SECNAV M-1850.1, Chapter 3, § 6 ("[D]iseases or injuries incurred by naval personnel while in active service are presumed to have been incurred in the line of duty unless clear and convincing evidence indicates otherwise.").

44.    In addition to setting forth these three mechanisms for identifying which Service members meet the referral criteria in DoDI 1332.18, DoD and Navy regulations also implement critical safeguards to ensure that eligible Service members do not slip through the cracks and miss out on the duty-related DES processing (and subsequent benefits) to which they are entitled. For example, the Navy cannot send any Service member's case to the PEB—via the MRR or otherwise—without including "complete" documentation about whether an injury was incurred in the line of duty. *See* SECNAVINST 1770.5, Enclosure 1, § 3(i) (noting that Chief of Naval Operations must ensure that "all cases referred to the [PEB] contain complete in-LOD documentation regardless of whether illness, injury, or disease incurred either on or off-duty"). DoDI 1332.18 similarly instructs that if a Service branch opts to require a Line of Duty Determination for duty-related DES processing, that Determination *must* be "done before sending a Service member's case to the PEB." DoDI 1332.18, App. 3 to Enclosure 3, § 6(b). And as a further backstop, even Reservists who are "pending separation for non-duty related medical

conditions may enter the DES for a determination of . . . whether the condition is duty related."
DoDI 1332.18 § 3(d).

45.     Finally, DoDI 1332.18 also requires that "[t]he standards for all determinations related to disability evaluation [] be consistently and equitably applied . . . to all Service members, and be uniform within the components of the Military Departments."  *Id.* § 3(c).  Put differently, notwithstanding the Navy's discretion over how to evaluate whether a Service member satisfies the eligibility criteria for DES referral in DoDI 1332.18, the Navy cannot apply inconsistent or inequitable standards to Reserve and Active Component members who suffered the same types of injuries while on active duty.

46.     The Navy, however, is failing to employ any of these mechanisms for evaluating whether an injured Reservist who is not currently on active duty is eligible for duty-related DES processing, and is evading each of these safeguards that are intended to ensure all eligible Reservists are referred to the proper DES path.  Rather than assess whether a Reservist who is not currently on active duty actually satisfies the eligibility criteria for referral in DoDI 1332.18, the Navy *only* considers whether the Reservist has a Line of Duty Benefits Letter.  *See* SECNAV M-1850.1, Chapter 2, § 1(b) (requiring Line of Duty Benefits Letters for Reservists for duty-related referral).  If the Reservist does not, the Navy prematurely sends the cases to the PEB without the Line of Duty paperwork required by SECNAVINST 1770.5 and DoDI 1332.18.

47.     From the Navy's perspective, then, the absence of an Line of Duty Benefits Letter serves as conclusive proof that the Reservist was *not* injured in the line of duty and is therefore ineligible for disability benefits.  *See id.*, Chapter 4, § 5(b)(1) (noting that Reservists who are unfit and "with neither active duty orders for a period longer than 30 days nor a [Line of Duty Benefits] letter . . . will be separated from naval service without DoD Disability Benefits").

48.    While the Navy may have the authority to require a Line of Duty Benefits Letter under DoDI 1332.18, it must provide a clear process to obtain one prior to referral to the PEB. Upon information and belief, the Navy has made it impossible for disabled Reservists seeking to enter the DES to obtain a Line of Duty Benefits Letter. The Navy has not adopted any regulations or issued any guidance explaining how to obtain such a letter, nor has the Navy specified any standards by which such Letters are issued.

49.    Upon information and belief, the Navy also does not affirmatively deny a Reservist a Line of Duty Benefits Letter when the Navy chooses to refer the Reservist to the MRR. Thus, although Navy regulations have designated that the Judge Advocate General shall "[s]erve as the appellate review authority . . . for inactive reservists found not eligible for a [Line of Duty Benefits] letter," SECNAVINST-1850.4F, Enclosure 2, § 8(d), because the Navy simply never issues the Letter to a Reservist who is sent through the MRR, the Reservist is left without any avenue to appeal his or her inability to obtain such a Letter.

50.    Using this Letter as a barrier to benefits to which these Reservists are entitled while simultaneously making the Letter impossible to obtain is quintessential arbitrary and capricious action. Moreover, in doing so, the Navy is also improperly placing the burden on Reservists to obtain Line of Duty Benefits Letters in order to proceed through the correct path of DES. But it is the Navy's responsibility, not the responsibility of the Reservist, to ensure that Reservists are referred into the correct path of the DES.

51.    The real-world outcome of the Navy's Line of Duty Benefits Letter requirement is that Reservists who are not currently on active duty are improperly forced into the Navy's MRR process, when they should instead be referred to the duty-related path of the DES, as required by

DoDI 1332.18.  Once referred into the MRR, there is no option for the Reservist to obtain a medical retirement or medical separation.  *See* SECNAV M-1850.1, Chapter 4, § 5(b)(1).

52.    Moreover, the appellate rights of a Reservist referred into the MRR are narrowly circumscribed.  While a dissatisfied Reservist can appeal an MRR finding to a PEB within the DES, that appeal only grants the Reservist access to the non-duty-related path—which, again, provides no option to obtain a medical retirement or medical separation.  If a Service member appeals an MRR finding to the PEB, the PEB considers only whether the member is physically qualified for continued military service.  If found not physically qualified, the Reservist will be separated from the military without disability benefits.

53.    Indeed, upon information and belief, the Navy has taken the position that the PEB will not grant a Reservist a Line of Duty Determination, or even make an informal Line of Duty finding (applying the in-LOD presumption, where appropriate) despite medical evidence in the PEB record that the Reservist incurred or aggravated an injury in the line of duty.  This position contravenes DoDI 1332.18's mandate that Reservists "pending separation for non-duty related medical conditions may enter the DES or a determination of . . . whether the condition is duty related."  DoDI 1332.18, § 3(d).

54.    Further, appellate rights in the MRR are so limited that when Reservists who are improperly referred into the MRR object that they warrant DES duty-related processing because they were injured in the line of duty, the Navy refuses to consider that question and instead points to the absence of a Line of Duty Benefits Letter as conclusive proof that the MRR process should proceed.  To add insult to injury, notwithstanding the medical evidence before the PEB, the PEB even includes an affirmative finding in such cases that a Reservist's "disability is not a proximate result of performing military duty" when no Line of Duty Benefits Letter is present.

55.     In short, the Navy is failing to refer eligible Reservists for mandatory duty-related processing and is not even assessing whether Reservists who are not on active duty, in fact, meet the DoDI 1332.18 criteria for mandatory referral.  The Navy is, therefore, wrongfully separating Reservists who require duty-related DES processing, resulting in hundreds of Reservists losing the benefits to which they are entitled and have earned.  The Navy commits these errors even when there is incontrovertible evidence that a Reservist was injured in the line of duty, as with Plaintiffs LaKia Beasley and Richard Henderson.

**C.     Ms. Beasley's Military History**

56.     Plaintiff LaKia Beasley enlisted in the Navy when she was 21 and served in the Active Component from May 2006 to November 2016 and in the Reserves from November 2016 to May 2021.  While on active duty, she deployed once to Iraq and twice to Afghanistan.  She was promoted multiple times, reaching the rank of Information Systems Technician Chief Petty Officer.

57.     Ms. Beasley received twelve awards, including two Achievement medals and Commendation medals from both the Navy and the Army, for her active duty service.  She consistently performed at or above the standards expected of her, and her superiors described her as "a key asset to [the] unit," "an exceptionally knowledgeable sailor," and a "proven leader in a combat environment."

58.     Ms. Beasley had no injuries or diseases when she enlisted in the Navy.

59.     In September 2012, Ms. Beasley began her final deployment to Afghanistan as part of SEAL Team Four—an elite special forces unit.  Within a matter of months, two of Ms. Beasley's close friends and colleagues were killed in active combat, and her Commanding Office committed suicide.

60.     First, one of Ms. Beasley's friends, a young SEAL who she had helped train, died on November 1.

61.     Three weeks later, Ms. Beasley lost another friend with whom she had grown particularly close during a prior deployment.  Ms. Beasley was operating the radio at the time of his death and heard contemporaneous reports of the attack over the wire.

62.     Less than a month later, Ms. Beasley's Commanding Officer killed himself.  Ms. Beasley had spoken to him as he headed off to bed the night before, only to wake up to the news of his death the following morning.

63.     Several other members of SEAL Team Four died during that deployment as well.

64.     When Ms. Beasley returned to the United States in May 2013, she realized that she had grown depressed and anxious as a result of the traumas that she endured in Afghanistan.  She had difficulty concentrating, lost her appetite, experienced mood swings, and had intrusive thoughts about her friends' deaths during the day.  Over time her symptoms expanded to include chronic migraines, hypervigilance, nightmares, insomnia, and asthma.

65.     In April 2015, Ms. Beasley began seeking mental health treatment at the Naval Medical Center in Portsmouth, Virginia for depression and anxiety.  Although Ms. Beasley was exhibiting clinical levels of symptoms of PTSD, she was initially erroneously diagnosed with "Adjustment Disorder" and "Other Specified Trauma and Stressor-Related Disorder."  She began taking anti-depressants and sleep medication, and engaging in psychotherapy to manage her conditions.  In 2016, while still a member of the Active Component, she began receiving treatment for PTSD.

66.     Ms. Beasley left the Active Component on November 2, 2016 and immediately joined the Navy Reserve.  Less than a year later, the VA issued her a 70% disability rating and

determined that, effective November 2, 2016, she had multiple service-connected conditions, including PTSD, migraines, and asthma.

67.    Shortly after she entered the Reserves, Ms. Beasley was referred into the MRR process, even though she was eligible for the duty-related path of DES because her injuries were incurred on active duty.

68.    In August 2018, as part of the MRR process, the Navy's Bureau of Medicine and Surgery ("BUMED") found Ms. Beasley physically qualified to continue naval service, but placed her on a one-year probationary period, after which she would be reevaluated. During this period, Ms. Beasley was prohibited from serving on active duty orders and participating fully in active duty training because of her medical conditions.

69.    The Navy resubmitted an MRR package for Ms. Beasley in March 2020, requesting that BUMED evaluate six conditions: (1) PTSD, (2) chronic migraines, (3) anxiety, (4) depression, (5) asthma, and (6) irritable bowel syndrome ("IBS"). BUMED reviewed her case in June 2020. Her MRR file included comments from her Commanding Officer recommending that she be found not physically qualified and noting that "the initial onset of [her] symptoms was connected with her service." The medical records maintained by BUMED also documented the mental health issues she faced as a result of the traumas she experienced in Afghanistan. BUMED agreed with her Commanding Officer's recommendation, and found that Ms. Beasley was not physically qualified and not recommended for retention in the Navy due to all six conditions. But BUMED did not reference that certain of these unfitting conditions were incurred in the line of duty.

70.    Ms. Beasley then sought referral of her MRR case to the PEB. In August 2020, the informal PEB confirmed BUMED's findings. Notwithstanding the evidence in Ms. Beasley's file tying her conditions to her active duty service, the informal PEB found that:

> In the absence of Service Headquarters' Line of Duty (LOD) determination indicating that the member's injury or disease was incurred in the performance of military duty and/or aggravated by military service; the Physical Evaluation Board (PEB) finds that the service member is Not Physically Qualified (NPQ) for continued military service because of a non-duty related disease or injury which precludes the member from performing the duties of her office, grade, rank, or rating, in such a manner as to reasonably fulfill the purpose of her reserve employment.

71.    Around the same time, Ms. Beasley petitioned for formal PEB review, asking that her MRR case be terminated or suspended so that she could obtain a Line of Duty Benefits Letter and be processed through the DES's duty-related path.  The formal PEB denied this request and affirmed the informal PEB's decision, stating that "[t]he MRR case before the PEB contains sufficient information to make an NPQ or [Physically Qualified] determination" and that she was ineligible for a duty-related DES referral because "[a]n LODB letter [had] not [been] granted to [her]."  Moreover, without a Line of Duty Benefits Letter on file, the formal PEB found that Ms. Beasley's "disability [was] not a proximate result of performing military duty."

72.    Ms. Beasley then petitioned the Secretary of the Navy Council of Review Boards for relief from the formal PEB's decision, arguing, amongst other things, that her disqualifying conditions were all incurred on active duty, that her case should have been evaluated through the duty-related DES process, and that her MRR case should have been suspended while she continued to try and obtain a determination that her injuries were incurred in the line of duty. Her petition was denied five days later.

73.    Notwithstanding the evidence in Ms. Beasley's medical records that she incurred multiple medical conditions while on active duty, the Navy never issued her a Line of Duty Benefits Letter.  Likewise, the Navy failed to consider Ms. Beasley's eligibility for duty-related processing and never referred her to the DES's duty-related path.  Nor did the Navy conduct a Line

of Duty Investigation, issue her any Line of Duty Determination, or give her the benefit of the in-LOD presumption.

74.     Prior to her discharge the Navy also never determined that Ms. Beasley was ineligible for a Line of Duty Benefits Letter, leaving Ms. Beasley no avenue to challenge such a determination.

75.     Instead, the Navy used its own failure to provide Ms. Beasley with a Line of Duty Benefits Letter to summarily discharge her from the Navy without the disability benefits to which she was statutorily entitled.

76.     Ms. Beasley was separated from the Navy without a medical retirement in May 2021.  Because she was referred into the MRR process, her case was never reviewed by an MEB, and a PEB never considered whether she was statutorily entitled to benefits as a result of disabilities incurred in the line of duty.

77.     By the time of Ms. Beasley's separation, her VA disability rating had risen to 90% as a result of multiple service-connected conditions, including migraines, PTSD, asthma, and IBS. Had the Navy properly processed her through the DES's duty-related path, Ms. Beasley would have received a medical retirement based on the rating of her unfitting conditions.  *See* 10 U.S.C. § 1201.

**D.     Mr. Henderson's Military History**

78.     Plaintiff Richard Henderson joined the Navy Reserves in April 2005 and achieved the rank of Navy Builder, First Class Petty Officer by the time he was separated in November 2020.

79.     Throughout the course of his career, Mr. Henderson earned multiple awards, medals, and decorations, including the Navy Achievement Medal, the Army Achievement Medal,

multiple Naval Reserve Meritorious Service Medals, the Iraq Campaign Medal with a Bronze Star, the Afghan Campaign Medal, and multiple Sea Service Deployment Ribbons.

80.     Mr. Henderson first deployed to Iraq in 2009 for 11 months, and deployed to Afghanistan in May 2013 in support of Naval Mobile Construction Battalion 25.   In both deployments, Mr. Henderson was ordered to active duty for a period of more than 30 days.  As his initial deployment to Afghanistan neared its end in April 2014, Mr. Henderson's active duty orders were extended, and he then began a second deployment in Afghanistan.

81.     In approximately late July or early August 2014, during this second deployment, Mr. Henderson's base came under fire from enemy rockets.  During the attack, Mr. Henderson was running for cover when he fell into a deep concrete ditch.  Mr. Henderson landed hard on his right torso and his legs tumbled forward over his head, injuring his neck, back, right knee, and right shoulder.  Not surprisingly, these injuries, which caused Mr. Henderson severe pain, could not be adequately remedied in a deployed environment.

82.     Mr. Henderson was medically evacuated from Afghanistan in September 2014 to receive treatment for his injuries, taken first to Landstuhl Regional Medical Center in Landstuhl, Germany, and then ultimately to the Naval Medical Center in Portsmouth, Virginia.  While in Portsmouth, Mr. Henderson was placed on MEDHOLD for evaluation of the injuries he sustained in Afghanistan, including to his right knee, right shoulder, and his spine.  MEDHOLD is a "medical treatment program for [Reservists] with the sole purpose of addressing medical conditions incurred or aggravated while in the line of duty."  SECNAVINST 1770.5, Enclosure 2, § 1.

83.     Mr. Henderson did not have any injuries to his right knee, right shoulder or spine when he was ordered to active duty at the end of May 2013.

84.     While on MEDHOLD, Mr. Henderson was diagnosed with a herniated disc in his neck, a torn medial meniscus and degeneration to his lateral meniscus in his right knee, a torn labrum in his right shoulder, right shoulder biceps tendinitis, and multilevel degenerative changes in his cervical spine.  In April 2015, Mr. Henderson had an arthroscopy and an arthroscopic partial lateral meniscectomy to repair his menisci in his right knee.  That August, Mr. Henderson also underwent right shoulder surgery.

85.     Mr. Henderson's military medical records from this time period repeatedly refer to his fall in Afghanistan as the cause of his right knee, right shoulder, and spinal injuries.

86.     Although Mr. Henderson's pain never ceased, he was released from MEDHOLD, and his active duty orders ended in November 2015.  Shortly thereafter, and at least by August 2016, Mr. Henderson's superiors at the Navy Operational Support Center ("NOSC") in Wilmington, North Carolina initiated paperwork investigating whether Mr. Henderson's injuries were incurred or aggravated in the line of duty.  According to that paperwork, Mr. Henderson "sustained an injury while mobilized to Afghanistan," and NOSC Wilmington approved the finding that Mr. Henderson was injured "in line of duty."  But Mr. Henderson was never issued a Line of Duty Benefits Letter.

87.     Despite Mr. Henderson's surgeries, he experienced progressively worsening pain in his right knee and right shoulder, as well as in his cervical spine.  Finally, in 2019, the Navy referred him into the MRR for six conditions: (1) nephrectomy,[9] (2) essential hypertension, (3) depressive illness, (4) obstructive sleep apnea, (5) chronic back pain, and (6) knee pain.  Mr.

---

[9] Mr. Henderson was diagnosed with kidney cancer (renal cell carcinoma) in 2018, and his right kidney was removed (nephrectomy) that same year.  Nonetheless, the other injuries for which Mr. Henderson was referred into the MRR process, and which he did sustain in the line of duty, render him unfit independently of his cancer.

Henderson's medical records make clear that at least two of these conditions—chronic back pain and knee pain—were incurred on active duty in Afghanistan, rendering him eligible for the duty-related path of DES.  Indeed, given that the "sole purpose" of MEDHOLD is to "address[] medical conditions incurred or aggravated *while in the line of duty*," SECNAVINST 1770.5, Enclosure 2, § 1 (emphasis added), Mr. Henderson could be placed on MEDHOLD *only* if he was injured in the line of duty.  Despite this, he was referred into the non-duty path.

88. After being referred into the MRR, Mr. Henderson discovered that the Navy had never formally approved the 2016 Line of Duty paperwork that had been submitted on his behalf. He never received an official denial, and was never told whether his paperwork had been officially denied or simply never acted upon.

89. In November 2019, as part of the MRR process, BUMED found that Mr. Henderson was not physically qualified due to "nephrectomy secondary to renal cell carcinoma," "essential hypertension, depressive illness, obstructive sleep apnea, chronic back pain (secondary to degenerative disc disease of the cervical and lumber spine) and knee pain," and that Mr. Henderson was "not recommended for retention in the Naval Reserve."  BUMED did not reference that most of these conditions were incurred in the line of duty.

90. Mr. Henderson appealed BUMED's findings to the informal PEB, which also found him not physically qualified in March 2020.  The informal PEB stated:

> In the absence of Service Headquarters' Line of Duty (LOD) determination indicating that the member's injury or disease was incurred in the performance of military duty and/or aggravated by military service; the Physical Evaluation Board (PEB) finds that the service member is Not Physically Qualified (NPQ) for continued military service because of a non-duty related disease or injury which precludes the member from performing the duties of his office, grade, rank, or rating, in such a manner as to reasonably fulfill the purpose of his reserve employment.

91.     Mr. Henderson further appealed those findings to the formal PEB, asking that the PEB determine that his injuries were incurred in the line of duty, or at least suspend his case until he could obtain that determination from the Navy.  The formal PEB denied Mr. Henderson's appeal and found Mr. Henderson not physically qualified on the basis of five medical conditions: (1) chronic cervical spine pain; (2) chronic lumbar spine pain; (3) right shoulder pain; (4) right knee pain; and (5) nephrectomy secondary to renal cell carcinoma.

92.     The formal PEB also found that Mr. Henderson's "disability is not a proximate result of performing military duty," despite acknowledging that Mr. Henderson's testimony "and the medical evidence" showed that he incurred his physical injuries while on active duty. Nonetheless, the Board treated the absence of a Line of Duty Benefits Letter as conclusive proof that Mr. Henderson was *not* injured in the line of duty.

93.     Mr. Henderson then petitioned to the Secretary of the Navy Council of Review Boards for relief from the formal PEB's findings, arguing again, amongst other things, that the PEB should have either found that several of his disqualifying conditions (cervical spine pain, right knee pain, and right shoulder pain) were incurred in the line of duty so that he could be retired through the duty-related DES path, or at the very least, suspended the MRR process so that he could obtain a finding to that effect.  Mr. Henderson's petition was denied, and in doing so, the Secretary made clear that the Navy viewed Mr. Henderson's injuries as "non-compensable" simply because he was never "issued a LODB letter from the appropriate authority."

94.     As a result, Mr. Henderson was separated without a medical retirement in November 2020.  Because he was referred into the MRR process, Mr. Henderson's case was never reviewed by an MEB, and a PEB never considered whether he was statutorily entitled to benefits as a result of disabilities incurred in the line of duty.  Ultimately, the Navy never finalized a Line

of Duty investigation for Mr. Henderson, never issued him a Line of Duty Determination, and never gave him the benefit of the in-LOD presumption.

95.    By the end of 2020, Mr. Henderson's service-connected VA disability rating was a combined disability of 100%, including 20% for right shoulder degenerative arthritis, 20% for radiculopathy of the right upper extremity,[10] 20% for radiculopathy of the left upper extremity, 10% for degenerative arthritis of the cervical spine, and 10% for right knee osteoarthritis.

## CLASS ACTION ALLEGATIONS

96.    Plaintiffs Beasley and Henderson bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and a class of similarly situated individuals.

97.    Plaintiffs seek to represent the following class:

All veterans of the United States Navy Reserve and Marine Corps Reserve who were separated from the military through the Navy's Medical Retention Review process as Not Physically Qualified without a Line of Duty Benefits Letter or a finding that they did not meet the eligibility criteria in DoDI 1332.18 for duty-related processing in the Disability Evaluation System.

Plaintiffs reserve the right to modify the proposed class definition in any class certification motion that may be filed.

98.    This action has been brought and may properly be maintained as a class action under federal law because it satisfies the requirements for maintaining a class action under Rule 23 of the Federal Rules of Civil Procedure.

99.    Joinder is impracticable because the Class is numerous. The Navy's response to a FOIA request indicates that there are at least 300 people that have been separated via the MRR process during the limitations period. Given the Navy's failure to even consider DoDI 1332.18's

---

[10] Radiculopathy in the upper extremities is caused by compressed nerves in the cervical spine.

eligibility criteria for mandatory referral, and upon information and belief, at the very least a majority of this group of individuals are likely in the Class. With the ongoing nature of this harm, there are now likely more Class members than those referenced in the FOIA request, as well as future Class members. The Class members can be identified using the records maintained in the ordinary course of business by Defendants.

100.    Common questions of law and fact exist as to all members of the proposed Class, including the following questions:

    a.    Whether the Navy's policy and practice of failing to consider the eligibility of Reservists who are not currently on active duty orders for referral into the duty-related path of the DES and to refer those eligible is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and without observance of procedures required by law.

    b.    Whether the Navy's policy and practice of separating Reservists who are not currently on active duty orders via the MRR process without conducting Line of Duty Investigations and making Line of Duty Determinations, or considering evidence of duty-incurred injuries, is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in excess of statutory authority, and without observance of procedures required by law.

    c.    Whether the Navy's failure to apply the in-LOD presumption to Reservists who incurred or aggravated injuries while on active duty for more than 30 days, but who are no longer on active duty orders, is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and without observance of procedures required by law.

d.   Whether the Navy's policy and practice of requiring Reservists who are not currently on active duty orders to obtain a Line of Duty Benefits Letter to be referred to the duty-related path of the DES without providing guidance on how to obtain that Letter is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and without observance of procedures required by law.

e.   Whether the Navy's policy and practice of referring cases to the PEB via the MRR without complete Line of Duty documentation is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and without observance of procedures required by law.

101.   Defendants are expected to raise common defenses to these claims, including denying that their actions were in violation of law.

102.   Plaintiffs' claims are typical of the members of the Class because Plaintiffs and all Class members are injured by the same wrongful acts, omissions, policies, and practices of Defendants as described in this Complaint.   Plaintiffs' claims arise from the same policies, practices, and courses of conduct that give rise to the claims of the Class members and are based on the same legal theories.

103.   Plaintiffs Beasley and Henderson have the requisite personal interest in the outcome of this action and will fairly and adequately protect the interests of the Class.   They have no interests adverse to the interests of the proposed Class.   They have retained counsel with experience and success in class action and veterans' matters.   Plaintiffs and their counsel are not aware of conflicts among members of the Class or between counsel and members of the Class.

104.    Defendants have acted on grounds generally applicable to all members of the Class, and this action seeks declaratory and injunctive relief.  Plaintiffs therefore seek class certification under Rule 23(b)(2).

105.    In the alternative, Plaintiffs seek class certification under Rule 23(b)(1) because prosecuting separate actions would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the proposed Class.

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**

**(Violation of the APA, 5 U.S.C. § 706(2)(A) –
Arbitrary and Capricious, Abuse of Discretion)**

106.    Plaintiffs reallege and incorporate here Paragraphs 1 through 105.

107.    DoDI 1332.18 requires the referral of all eligible Service members into the DES. DoDI 1332.18, App. 1 to Enclosure 3, § 2(b).  DoDI 1332.18, Appendix 1 to Enclosure 3 § 3(a)(2) provides that Reservists "who are not on orders to active duty specifying a period of more than 30 days but who incurred or aggravated a medical condition while the member was ordered to active duty for more than 30 days" are "eligible for referral to the DES for duty-related determinations."

108.    DoDI 1241.01 § 3(c) provides that Reservists "will be referred to the DES when the criteria for referral are met in accordance with DoDI 1332.18."

109.    Nonetheless, the Navy refuses to refer eligible Reservists who are not currently on active duty orders to the DES's duty-related path unless they have a Line of Duty Benefits Letter.

110.    Defendants' separation of Plaintiffs and Class members without considering their eligibility for the DES's duty-related path and without referring those eligible Reservists to the

duty-related path of the DES, as described above, was arbitrary and capricious, constituted an abuse of discretion, and was otherwise not in accordance with law.

111.    Likewise, Defendants' practice of failing to provide a clear and fair process by which a Reservist can obtain a Line of Duty Benefits Letter was arbitrary and capricious, constituted an abuse of discretion, and was otherwise not in accordance with law.

112.    As a direct result of Defendants' failure to consider eligibility for duty-related processing and unlawful separation of Plaintiffs and Class members, Plaintiffs and Class members have been and continue to be deprived of the disability benefits to which they are entitled under 10 U.S.C. § 1201 and 10 U.S.C. § 1203.

113.    Under the APA, this Court has authority to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, and [an] abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).  Plaintiffs are therefore entitled to the relief requested in this Complaint.

## SECOND CLAIM FOR RELIEF

### (Violation of the APA, 5 U.S.C. § 706(2)(C) – Agency Action Short of Statutory Right)

114.    Plaintiffs reallege and incorporate here Paragraphs 1 through 113.

115.    10 U.S. C. § 1201 provides that Service members are eligible for medical retirement when, amongst other things, the member's disability rating "is at least 30 percent" and "the disability was incurred in [the] line of duty after September 14, 1978."

116.    10 U.S.C. § 1203 provides that Service members are eligible for medical separation when, amongst other things, the member's disability rating is "less than 30 percent" and "the disability was . . . incurred in [the] line of duty after September 14, 1978."

117.    Defendants failed to consider whether Plaintiffs and Class members were eligible for duty-related DES processing before separating them via the MRR process.  Accordingly, Defendants failed to refer Plaintiffs and Class members for said medical retirement or medical separation in violation of 10 U.S.C. §§ 1201 and 1203.

118.    Under the APA, this Court has authority to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2)(C).  Plaintiffs are therefore entitled to the relief requested in this Complaint.

### THIRD CLAIM FOR RELIEF

**(Violation of the APA, 5 U.S.C. § 706(D) –**
**Agency Action Without Observance of Procedure Required by Law)**

119.    Plaintiffs reallege and incorporate here Paragraphs 1 through 118.

120.    10 U.S.C. § 1214 provides that "no member of the armed forces may be retired or separated for physical disability without a full and fair hearing if he demands it."

121.    DoDI 1332.18 requires that Service members receive an opportunity to present evidence on their behalf.  *See* DoDI 1332.18, Enclosure 3, § 3(h)(6).

122.    DoDI 1332.18 also dictates as a "Referral Requirement" that "[w]hen an LOD determination is required, it will be done before sending a Service member's case to the PEB." DoDI 1332.18, App. 3 to Enclosure 3, § 6(b).

123.    Likewise, SECNAVINST 1770.5 requires that Navy ensure that "all cases referred to the Physical Evaluation Board contain complete in-LOD documentation regardless of whether illness, injury, or disease incurred either on or off-duty."  SECNAVINST 1770.5, Enclosure 1, § 3(i).

124.    Furthermore, DoDI 1332.18 mandates that Reservists "pending separation for non-duty related medical conditions may enter the DES for a determination of . . . whether the condition is duty related."  DoDI 1332.18 § 3(d).

125.    Defendants' separation of the Plaintiffs and Class members without preparing and providing the proper Line of Duty documentation to the PEB, and without considering evidence that Plaintiffs' and Class members' injuries were incurred or aggravated in the line of duty, as described above, resulted in agency action without the observance of procedure required by law. *See* 5 U.S.C. § 706(D).

126.    Likewise, by refusing to even consider Plaintiffs and Class members' evidence of their eligibility for medical retirement or medical separation, Defendants failed to provide Plaintiffs and Class members with a full and fair hearing before separating them via the MRR process in violation of 10 U.S.C. § 1214.

127.    Under the APA, this Court has authority to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . without observance of procedure required by law."  5 U.S.C. § 706(2)(D).  Plaintiffs are therefore entitled to the relief requested in this Complaint.

## **PRAYER FOR RELIEF**

128.    Plaintiffs and the Class they represent have no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint.  Plaintiffs and the Class have suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of Defendants, as alleged herein, unless Plaintiffs and the Class members they represent are granted the relief they request.

129.     WHEREFORE, Plaintiffs Beasley and Henderson and Class Members respectfully request that the Court provide the following relief:

    a.   Certify this case as a Class Action;

    b.   Appoint Ms. Beasley and Mr. Henderson as the representatives of the Class;

    c.   Appoint Plaintiffs' Counsel as Class Counsel;

    d.   Declare that Defendants' actions have violated statutory law and applicable regulations;

    e.   Declare that Defendants' failure to follow the required procedures, resulting in denying Plaintiffs and Class Members the full and fair determination guaranteed by law as to whether they are entitled to military medical retirement or separation, was arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law, in excess of statutory authority, and without observance of procedure required by law;

    f.   Order that the separations of Plaintiffs and Class Members via the MRR process was unlawful and should be set aside;

    g.   Enter a permanent injunction requiring that, unless explicitly declined in writing by the Service Member, Defendants shall determine each Plaintiff and Class Member's eligibility for duty-related processing as determined by DoDI 1332.18 and shall refer each eligible Plaintiff and Class Member to the duty-related path of the DES for full processing;

    h.   Enter a permanent injunction requiring Defendants to implement procedures consistent with applicable authorities to protect the statutory and regulatory

entitlements of Navy and Marine Corps Reservists to medical retirement or separation with benefits due to disability;

i.   Award Plaintiffs' attorney fees and costs incurred in bringing and maintaining this action pursuant to 28 U.S.C. § 2412 and other applicable authorities;

j.   Retain jurisdiction of this case to monitor Defendants' compliance with the orders of this Court; and

k.   Grant such other and further relief this Court deems just and appropriate.

DATED:  March 10, 2022.

*/s/ Andrew Soukup*

Andrew Soukup (DC Bar No. 995101)
Ranganath Sudarshan (DC Bar No. 977213)
Jeffrey Huberman (DC Bar No. 1531182)
Nora Eccles (DDC Bar ID No. D00564)
COVINGTON & BURLING LLP
850 10th Street NW
Washington, DC 20001-4956
Phone: (202) 662-6000
asoukup@cov.com
rsudarshan@cov.com
jhuberman@cov.com
neccles@cov.com

*/s/ Esther Leibfarth*

Esther Leibfarth (DC Bar No. 1016515)
Rochelle Bobroff (DC Bar No. 420892)
David Sonenshine (DC Bar No. 496138)
Renee Burbank (*pro hac vice*)*
NATIONAL VETERANS LEGAL
SERVICES PROGRAM
1600 K Street, NW, Suite 500
Washington, DC  20006-2833
Phone: 202.265.8305
Esther@nvlsp.org
rochelle@nvlsp.org

david@nvlsp.org
Renee.Burbank@nvlsp.org

\* *Application for Pro Hac Vice Admission Forthcoming*

*Counsel for Plaintiffs LaKia Beasley, Richard Henderson, and the proposed Class*