# Exhibit A



# Department of Defense
# **INSTRUCTION**

**NUMBER** 1332.18
August 5, 2014
*Incorporating Change 1, Effective May 17, 2018*

USD(P&R)

SUBJECT:    Disability Evaluation System (DES)

References:    See Enclosure 1

1. <u>PURPOSE</u>.  This instruction:

   a.  Reissues DoD Directive (DoDD) 1332.18 (Reference (a)) as a DoD instruction (DoDI) in accordance with the authority in DoDD 5124.02  (Reference (b)).

   b.  Establishes policy, assigns responsibilities, and provides procedures for referral, evaluation, return to duty, separation, or retirement of Service members for disability in accordance with Title 10, United States Code (U.S.C.) (Reference (c)); and related determinations pursuant to sections ~~3501,~~ 6303, 8332, and 8411 of Title 5, U.S.C. (Reference (d)); section 104 of Title 26, U.S.C. (Reference (e)); and section 2082 of Title 50, U.S.C. (Reference (f)).

   c.  Incorporates and cancels DoDI 1332.38 (Reference (g)) and the Under Secretary of Defense for Personnel and Readiness (USD(P&R)) Memorandums (References (h) through (o)).

2. <u>APPLICABILITY</u>.  This instruction applies to the OSD, the Military Departments, the Office of the Chairman of the Joint Chiefs of Staff and the Joint Staff, the Combatant Commands, the Office of the Inspector General of the Department of Defense, the Defense Agencies, the DoD Field Activities, and all other organizational entities within the DoD.

3. <u>POLICY</u>.  It is DoD policy that:

   a.  The DES will be the mechanism for determining ~~return to~~ *fitness for* duty, separation, or retirement of Service members because of disability in accordance with Reference (c).

   b.  Service members will proceed through one of ~~three~~ *the* DES processes:  the Legacy Disability Evaluation System (LDES), *or* the Integrated Disability Evaluation System (IDES)~~, or the Expedited Disability Evaluation System (EDES).~~  DoD's objective in all DES processes is to

collaborate with the Department of Veterans Affairs (VA) to ensure continuity of care, timely processing, and seamless transition of the Service member from DoD to VA in cases of disability separation or retirement.  *It is DoD policy for Service members to process through the IDES unless a compelling and individualized reason for process through the LDES is approved by the Secretary of the Military Department.*

c.  The standards for all determinations related to disability evaluation will be consistently and equitably applied, in accordance with Reference (c), to all Service members, and be uniform within the components of the Military Departments.

d.  Reserve Component (RC) Service members who are not on a call to active duty of more than 30 days and who are pending separation for non-duty related medical conditions may enter the DES for a determination of fitness and whether the condition is duty related.

e.  In determining a Service member's disability rating, the Military Department will consider all medical conditions, whether individually or collectively, that render the Service member unfit to perform the duties of the member's office, grade, rank, or rating.

f.  Service members who are pending permanent or temporary disability retirement and who are eligible for a length of service retirement at the time of their disability evaluation may elect to be retired for disability or for length of service.  However, when retirement for length of service is elected, the member's retirement date must occur within the time frame that a disability retirement is expected to occur.

g.  A Service member may not be discharged or released from active duty because of a disability until he or she has made a claim for compensation, pension, or hospitalization with the VA or has signed a statement that his or her right to make such a claim has been explained, or has refused to sign such a statement.  The Secretaries of the Military Departments may not deny a Service member who refuses to sign such a claim any privileges within DES policy as noted in this instruction.

h.  RC Service members on active duty orders specifying a period of more than 30 days will, with their consent, be kept on active duty for disability evaluation processing until final disposition by the Secretary of the Military Department concerned.  *In accordance with DoDI 1241.01 (Reference (p)), RC Service members may elect to be released from active duty before completion of DES processing.  These Service members may receive legal counseling in accordance with the regulations of the Military Department concerned.*

i.  The Secretaries of the Military Departments may authorize separation on the basis of congenital or developmental defects not being compensable under the Veterans Affairs Schedule for Rating Disabilities (VASRD) if defects, circumstances or conditions interfere with assignment to or performance of duty.  ~~These Service members will not be referred to the DES.~~ *The basis for separation will be appropriately documented following guidelines and criteria in accordance with DoDI 6040.42 (Reference (q)).  These Service members will not be referred to the DES unless the defect was subject to super imposed disease or injury during military service, or other potentially unfitting conditions exist that may have been incurred or aggravated by*

*military service.*

4. <u>RESPONSIBILITIES</u>.  See Enclosure 2.

5. <u>PROCEDURES</u>.  See Enclosure 3 of this instruction.  Additional procedural guidance for the LDES is included in DoD Manual (DoDM) 1332.18, Volume 1 (Reference ~~(p)~~ *(r)*).  Additional procedural guidance for the IDES is included in DoDM 1332.18, Volume 2 (Reference ~~(q)~~ *(s)*). ~~Procedural guidance for EDES will be published in a separate DoD issuance.~~

6. <u>INFORMATION COLLECTION REQUIREMENTS</u>

a.  The DES Annual Report, referred to in paragraphs ~~1d(6)(a)~~ *1.d.(6)(a)*, ~~1d(6)(b)~~ *1.d.(6)(a)*, and ~~1e(4)~~ *1.e.(4)* of Enclosure 2 of this instruction, has been assigned report control symbol DD-HA(A,Q)2547 in accordance with the procedures in Volume 1 of DoD Manual 8910.01 (Reference ~~(r)~~ *(t)*).

b.  The DES quarterly data submission, referred to in paragraphs ~~1d(6)(b)~~ *1.d.(6)(b)* and ~~1d(4)~~ *1.d.(4)* of Enclosure 2 of this instruction, has been assigned report control symbol DD-HA(A,Q)2547 in accordance with the procedures in Reference ~~(r)~~ *(t)*.

7. <u>RELEASABILITY</u>.  **Cleared for public release**.  This instruction is available on ~~the Internet from~~ the DoD Issuances Website at ~~http://www/dtic/mil/whs/directives~~ *http://www.esd.whs.mil/DD*.

8. <u>EFFECTIVE DATE</u>.  This instruction *is effective August 5, 2014.*~~:~~

~~a.  Is effective August 5, 2014.~~

~~b.   Will expire effective August 5, 2024 if it hasn't been reissued or cancelled before this date in accordance with DoDI 5025.01 (Reference (s).~~

Jessica L. Wright
Under Secretary of Defense for
Personnel and Readiness

*DoDI 1332.18, August 5, 2014*

Enclosures
1.  References
2.  Responsibilities
3.  Operational Standards for the DES

Glossary

<u>TABLE OF CONTENTS</u>

ENCLOSURE 1:  REFERENCES .................................................................................... 6*7*

ENCLOSURE 2:  RESPONSIBILITIES ........................................................................ 8*10*

   ASSISTANT SECRETARY OF DEFENSE FOR HEALTH AFFAIRS (ASD(HA)) .......... 8*10*
   ~~ASD(RA)~~ *ASD(M&RA)* ......................................................................................... 9*12*
   GENERAL COUNSEL OF THE DEPARTMENT OF DEFENSE (GC DoD) ................. 10*12*
   SECRETARIES OF THE MILITARY DEPARTMENTS ................................................ 10*12*

ENCLOSURE 3:  OPERATIONAL STANDARDS FOR THE DES  .................................... 13*15*

   OVERVIEW OF THE DES ............................................................................................ 13*15*
   MEB ........................................................................................................................ 14*16*
      Purpose ................................................................................................................ 14*16*
      Composition ........................................................................................................ 14*16*
      Resourcing .......................................................................................................... 14*16*
      Referral to PEB ................................................................................................... 14*16*
      Service Member Medical Evaluations ................................................................ 14*16*
      Content ................................................................................................................ 15*17*
      Competence ......................................................................................................... 15*18*
      Medical Documentation for RC Members with Non-duty Related Conditions ........... 15*18*
      Non-medical Documentation ............................................................................... 15*18*
   DISABILITY EVALUATION ...................................................................................... 16*18*
      Purpose ................................................................................................................ 16*18*
      Informal Physical Evaluation Board (IPEB) ...................................................... 16*18*
      FPEB .................................................................................................................. 16*18*
      Composition ........................................................................................................ 16*19*
      Eligibility ............................................................................................................ 17*19*
      Resourcing .......................................................................................................... 17*19*
      Issues .................................................................................................................. 17*19*
      Hearing Rights .................................................................................................... 17*19*
      Record of Proceedings ........................................................................................ 18*20*
      Duty-related Determinations ............................................................................... 18*20*
      Non-duty Related Determinations ....................................................................... 19*21*
      Appellate Review ............................................................................................... 19*21*
      Quality Assurance .............................................................................................. 19*21*
   COUNSELING ......................................................................................................... 19*21*
      Purpose ................................................................................................................ 19*22*
      Topics ................................................................................................................. 19*22*
      Incompetent Service Members ............................................................................ 20*23*
      Pre-separation Counseling .................................................................................. 20*23*
   CASE MANAGEMENT ............................................................................................. 20*23*
   FINAL DISPOSITION .............................................................................................. 21*23*
   ADMINISTRATIVE DECISIONS ............................................................................. 21*23*

TRAINING AND EDUCATION ....................................................................................... 21 24
   Assignment of Personnel to the DES................................................................................ 21 24
   Training........................................................................................................................... 22 24
   Mentoring........................................................................................................................ 22 25

APPENDIXES
   1. DES REFERRAL......................................................................................................... 23 26
   2. STANDARDS FOR DETERMINING UNFITNESS DUE TO DISABILITY OR
       MEDICAL DISQUALIFICATION........................................................................... 27 30
   3. STANDARDS FOR DETERMINING COMPENSABLE DISABILITIES ............ 31 34
   4. TDRL MANAGEMENT ............................................................................................. 40 43
   5. ADMINISTRATIVE DETERMINATIONS .............................................................. 44 47
   6. FINAL DISPOSITION ................................................................................................ 47 50

GLOSSARY ..................................................................................................................... 51 54

   PART I:  ABBREVIATIONS AND ACRONYMS ..................................................... 50 54
   PART II:  DEFINITIONS........................................................................................... 52 55

ENCLOSURE 1

REFERENCES

(a)  DoD Directive 1332.18, "Separation or Retirement for Physical Disability," November 4, 1996 (hereby cancelled)

(b)  DoD Directive 5124.02, "Under Secretary of Defense for Personnel and Readiness (USD(P&R))," June 23, 2008

(c)  Title 10, United States Code

(d)  Title 5, United States Code

(e)  Section 104 of Title 26, United States Code

(f)  Section 2082 of Title 50, United States Code

(g)  DoD Instruction 1332.38, "Physical Disability Evaluation," November 14, 1996, as amended (hereby cancelled)

(h)  Under Secretary of Defense for Personnel and Readiness Memorandum, "Policy Guidance for the Disability Evaluation System and Establishment of Recurring Directive-Type Memoranda," May 3, 2007 (hereby cancelled)

(i)  Under Secretary of Defense for Personnel and Readiness Memorandum, "Directive-Type Memoranda (DTM) on Standards for Determining Unfitness Due to Medical Impairment (Deployability)," December 19, 2007 (hereby cancelled)

(j)  Under Secretary of Defense for Personnel and Readiness Memorandum, "Directive-Type Memorandum (DTM) on Implementing Disability-Related Provisions of the National Defense Authorization Act of 2008 (Pub. L. 110-181)," March 13, 2008 (hereby cancelled)

(k)  Under Secretary of Defense for Personnel and Readiness Memorandum, "Policy Memorandum on Implementing Disability-Related Provisions of the National Defense Authorization Act of 2008 (Pub. L. 110-181)," October 14, 2008 (hereby cancelled)

(l)  Under Secretary of Defense for Personnel and Readiness Memorandum, "Policy and Procedural Memorandum for the DES Pilot Program," November 21, 2007 (hereby cancelled)

(m)  Under Secretary of Defense for Personnel and Readiness Memorandum "Policy and Procedural Update for the Disability Evaluation System (DES) Pilot Program," December 11, 2008 (hereby cancelled)

(n)  Under Secretary of Defense for Personnel and Readiness Memorandum "Cross Service Support and Service Organization Role at Disability Evaluation System (DES) Pilot Locations," March 29, 2010 (hereby cancelled)

(o)  Under Secretary of Defense for Personnel and Readiness Memorandum, "Directive-Type Memorandum – Integrated Disability Evaluation System," December 19, 2011 (hereby cancelled)

(p)  ~~DoD Manual 1332.18, Volume 1, "Disability Evaluation System (DES) Manual: General Information and Legacy Disability Evaluation System (LDES) Time Standards," August 5, 2014~~

(p)  *DoD Instruction 1241.01, "Reserve Component (RC) Line of Duty Determination for Medical and Dental Treatments and Incapacitation Pay Entitlements," April 19, 2016*

*DoDI 1332.18, August 5, 2014*

(q) ~~DoD Manual 1332.18, Volume 1, "Disability Evaluation System (DES) Manual:  General Information and Legacy Disability Evaluation System (LDES) Time Standards," August 5, 2014~~

*(q)   DoD Instruction 6040.42, "Management Standards for Medical Coding of DoD Health Records," June 8, 2016*

(~~p~~r)   DoD Manual 1332.18, Volume 1, "Disability Evaluation System (DES) Manual:  General Information and Legacy Disability Evaluation System (LDES) Time Standards," August 5, 2014

(~~q~~s) DoD Manual 1332.18, Volume 2, "Disability Evaluation System (DES) Manual:  Integrated Disability Evaluation System," August 5, 2014

(s) ~~DoD Instruction 5025.01, "DoD Issuances Program," June 6, 2014~~

(~~r~~t)   DoD Manual 8910.01, Volume 1, "DoD Information Collections Manual:  Procedures for DoD Internal Information Collections," June 30, 2014*, as amended*

(t) ~~Title 38, Code of Federal Regulations, Part 4 (part 4 is also known as "the Department of Veterans Affairs Schedule for Rating Disabilities (VASRD)")~~

*(u)   DoD Directive 5136.01, "Assistant Secretary of Defense for Health Affairs (ASD(HA))," September 30, 2013, as amended*

(u) ~~Under Secretary of Defense for Personnel and Readiness Memorandum, "Expedited DES Process for Members with Catastrophic Conditions and Combat-Related Causes," January 6, 2009~~

(~~t~~v)   Title 38, Code of Federal Regulations, Part 4 (part 4 is also known as "the Department of Veterans Affairs Schedule for Rating Disabilities (VASRD)")

(~~v~~w) Memorandum of Agreement Between the Department of Defense and Department of Veterans Affairs, January 16, 2009

(~~w~~x) Memorandum of Agreement Between the Department of Defense and Department of Veterans Affairs, June 16, 2010

(~~x~~y) DoD 5400.11-R, "Department of Defense Privacy Program," May 14, 2007

(y) ~~Section 1612 of Public Law 110-181, "National Defense Authorization Act for Fiscal Year 2008," January 28, 2008~~

(z) ~~Joint Federal Travel Regulations, Volume 1, "Uniformed Service Members," current edition~~

(aa) ~~Joint Federal Travel Regulations, Volume 2, "Department of Defense Civilian Personnel," current edition~~

(ab) ~~DoD Directive 1332.27, "Survivor Annuity Programs for the Uniformed Services," June 26, 2003~~

*(z)   DoD Directive 5400.11, "DoD Privacy Program," October 29, 2014*

*(aa) DoD Instruction 1000.30, "Reduction of Social Security Number (SSN) Use Within DoD," August 1, 2012*

*(ab) Administrative Instruction 15, "OSD Records and Information Management Program," May 3, 2013, as amended*

*(ac) DoD 6025.18-R, "DoD Health Information Privacy Regulation," January 24, 2003*

(~~y~~ad) Section 1612 of Public Law 110-181, "National Defense Authorization Act for Fiscal Year 2008," January 28, 2008

(~~z~~ae) Joint Federal Travel Regulations, Volume 1, "Uniformed Service Members," current edition

(~~aa~~*af*)  Joint ~~Federal~~ Travel Regulations, Volume 2, "Department of Defense Civilian Personnel," current edition

(~~ab~~*ag*)  DoD Directive 1332.27, "Survivor Annuity Programs for the Uniformed Services," June 26, 2003

~~(ac)   DoD Directive 1332.35, "Transition Assistance for Military Personnel," December 9, 1993~~

*(ah)  DoD Instruction 1332.35, "Transition Assistance Program (TAP) for Military Personnel," February 29, 2016*

(~~ad~~*ai*)  DoD Instruction 1332.14, "Enlisted Administrative Separations," January 27, 2014*, as amended*

(~~ae~~*aj*) Section 115 of Title 32, United States Code

(~~af~~*ak*)  Title 37, United States Code

(~~ag~~*al*)  Title 38, United States Code

~~(ah)   DoD Instruction 1332.30, "Separation of Regular and Reserve Commissioned Officers," November 25, 2013~~

*(am)  DoD Instruction 1332.30, "Commissioned Officer Administration Separations," May 11, 2018*

~~(ai)   Joint Publication 1-02, "Department of Defense Dictionary of Military and Associated Terms," current edition~~

*(an)  Office of the Chairman of the Joint Chiefs of Staff, "DoD Dictionary of Military and Associated Terms," current edition*

*DoDI 1332.18, August 5, 2014*

ENCLOSURE 2

RESPONSIBILITIES

1.  ASSISTANT SECRETARY OF DEFENSE FOR HEALTH AFFAIRS (ASD(HA)).  Under the authority, direction, and control of the USD(P&R), the ASD(HA):

 *a.  Oversees the Director, Defense Health Agency (DHA), in the execution of programmatic and operational responsibilities in accordance with DoDD 5136.01 (Reference (u)).*

 a~~a~~b.  Establishes the Disability Advisory Council (DAC) to advise and recommend improvement of the DES and designates its chair.

 ~~b~~c.  Monitors the performance of the DES and recommends improvements in DES policy.

 ~~c~~d.  Reviews DES policies, including those proposed by the Military Departments.

 ~~d~~e.  Through the Deputy Assistant Secretary of Defense for ~~Warrior Care Policy (DASD)(WCP))~~ *Health Services Policy and Oversight (DASD(HSP&O))*:

   (1)  In coordination with the ~~Assistant Secretary of Defense for Reserve Affairs (ASD(RA))~~ *Assistant Secretary of Defense for Manpower and Reserve Affairs (ASD(M&RA))* and the Secretaries of the Military Departments, oversees, assesses, and reports on the performance of the DES and recommends to the ASD(HA) changes in policy, procedure, or resources to improve DES performance.

   (2)  Monitors changes to military personnel, ~~and~~ compensation statutes and DoD policy, and other pertinent authorities, to assess their impact on disability evaluation, RC medical disqualification, and related benefits.

   (3)  Reviews Military Departments' policies and procedures for disability evaluation that affect the uniformity of standards for separation or retirement for unfitness because of disability, or separation of RC members for medical disqualification.

   (4)  Develops quality assurance procedures to ensure that policies are applied fairly and consistently and reports to ASD(HA) the results of Military Department DES quality control programs.

   (5)  Develops and executes a strategic communications plan for the DES in coordination with:

     (a)  Assistant *to the* Secretary of Defense for Public Affairs

     (b)  Secretaries of the Military Departments

(c)  Under Secretary for Benefits, Veterans Benefits Administration, VA

(d)  Under Secretary for Health, Veterans Health Administration, VA

(6)  Establishes reporting requirements necessary to monitor and assess the performance of the DES and compliance of the Military Departments with this instruction.

(a)  Not later than July 1 of each year, publishes the information the Military Departments must include in the DES Annual Report.

(b)  Analyzes quarterly data submitted by the Military Departments and provides the DES Annual Report to the ASD(HA).

(c)  Analyzes monthly DES data to assess trends that might inform policy adjustments.

~~e.  Through the Deputy Assistant Secretary of Defense for Health Services Policy and Oversight:~~

(1~~7~~)  Reviews Military Departments' policies and procedures for disability evaluation that affect the uniformity of standards for separation or retirement for unfitness because of disability or separation of RC members for medical disqualification.

(2~~8~~)  Monitors changes to the laws, and regulations of the VA to assess their impact on the DoD's application of the VASRD (Reference (*t*~~u~~)) to Service members determined unfit because of disability, and recommends timely guidance to the ASD(HA).

(3~~9~~)  Recommends guidance and performance monitoring necessary to implement this instruction, including recommending performance metrics and areas of emphasis.

(4~~10~~)  ~~DASD(WCP) advises~~ *Advises* on the accurateness and completeness of the DES Annual Report and DES quarterly data submitted by the Military Departments to propose improvements to the DES based upon the submitted performance data.

(5~~11~~)  In conjuction with the Secretaries of the Military Departments and the Director, ~~Defense Health Agency~~ *DHA,* develops program planning, allocation, and use of healthcare resources for activities within the DoD related to the DES.

(6~~12~~)  In coordination with the Military Departments *and DHA* information technology (IT) offices, ensures IT support and access to programs used at the military treatment facilities (MTFs) and other related systems for medical record input and retrieval are available to each Military Department physical evaluation board (PEB).

(7~~13~~)  Provides grade O-6 or civilian equivalent representation with a sufficient understanding of the DES to the DAC.

2. ~~ASD(RA)~~ *ASD(M&RA)*.  Under the authority, direction, and control of the USD(P&R), the ~~ASD(RA)~~ *ASD(M&RA)*:

   a.  In coordination with the ASD(HA) and the Secretaries of the Military Departments, ensures that policies for the DES are applied for RC personnel consistent with those established for Active Component (AC) personnel and reflect the needs of RC members as required by Reference (c).

   b.  Provides O-6 level or civilian-equivalent representation with sufficient understanding of the DES to the DAC.

   c.  Reviews annual DES performance and recommends improvements to ASD(HA) to ensure process efficiency and equity for members of the RC.


3.  <u>GENERAL COUNSEL OF THE DEPARTMENT OF DEFENSE (GC DoD)</u>.  In consultation with the General Counsels and the Judge Advocates General of the Military Departments, the GC DoD provides policy guidance on legal matters relating to DES policy, issuances, proposed exceptions to policy, legislative proposals, and provide legal representation for the DAC as set forth in Enclosure 7 of Reference (~~p~~*r*).


4.  <u>SECRETARIES OF THE MILITARY DEPARTMENTS</u>.  The Secretaries of the Military Departments:

   a.  Comply with chapter 61 of Reference (c), this instruction, and any implementing guidance.

   b.  Implement the DES in accordance with this instruction.

   c.  Manage the temporary disability retired list (TDRL) in accordance with Appendix 4 of Enclosure 3 of this instruction.

   d.  Staff and provide resources to meet DES performance goals, without reducing Service members' access to due process consistent with Reference (~~p~~*r*).

   e.  Establish procedures to develop and implement standardized training programs, guidelines, and curricula for Military Department personnel who administer DES processes, including physical evaluation board liaison officers (PEBLOs), non-medical case managers, and personnel assigned to the medical evaluation board (MEB), the PEB, and appellate review authorities.

   f.  Establish and execute agreements to support the disability processing of members who receive medical care from another Military Department.

g.  Establish procedures to ensure Service members who are hospitalized or receiving treatment at a VA or a non-governmental facility are referred, processed, and counseled in a manner similar to their peers.

h.  In consultation with their respective Judge Advocates General, establish policy, training and procedures for the provision of legal counsel to Service members in the DES.

i.  Establish a quality assurance process to:

(1)  Ensure policies and procedures established by this instruction are fairly and consistently implemented.

(2)  Establish procedures to ensure the accuracy and consistency of MEB and PEB determinations and decisions.

(3)  Establish procedures to monitor and sustain proper performance of the duties of MEBs, PEBs, and PEBLOs.

j.  Prepare and forward data submissions for the DES Annual Report to the ~~DASD(WCP)~~ *DASD(HSP&O).*

k.  Through their respective Inspectors General, review compliance with the requirements contained in Enclosure 3 of this instruction every 3 fiscal years for the preceding 3-fiscal-year period.  Forward a copy of their final Inspectors General compliance reports to the USD(P&R).

l.  Investigate all matters of potential fraud pertaining to the DES and resolve as appropriate.

m.  Provide grade O-6 or civilian-equivalent representation with a sufficient understanding of the DES to the DAC.

~~n.  Comply with USD(P&R) Memorandum (Reference (u)).~~

~~n~~*n*.  Comply with the Memorandums of Agreement between the DoD and the VA pertaining to the IDES (References (~~v~~*w*) and (~~w~~*x*)).

~~p~~*o*.  Comply with the *privacy* procedures outlined in DoD 5400.11-R (Reference (~~x~~*y*))*, DoDD 5400.11 (Reference (z)), DoDI 1000.30 (Reference (aa)), Administrative Instruction 15 (Reference (ab)), and DoD 6025.18-R (Reference (ac)).*

~~q~~*p*.  Establish procedures to ensure that, with the consent of the Service member, the address and contact information of the Service member are transmitted to the department or agency for other appropriate veterans affairs of the State in which the Service member intends to reside after retirement or separation.

~~r~~*q*.  Establish procedures to provide, with consent of the Service member, notification of the hospitalization of a Service member under their jurisdiction evacuated from a theater of combat

and admitted to an MTF within the United States to the Senators representing the State, and the Member, Delegate or Resident Commissioner of the House of Representatives representing the district, that includes the Service member's home ~~or~~ *of* record or a different location as provided by the Service member.

~~s~~*r*.  Before demobilizing or separating an RC member who incurred an injury or illness while on active duty, provide to the Service member information on:

(1)  The availability of care and administrative processing through military-affiliated or community support services.

(2)  The location of the support services, whether military-affiliated or community, located nearest to the permanent place of residence of the Service member.

ENCLOSURE 3

OPERATIONAL STANDARDS FOR THE DES

1. OVERVIEW OF THE DES

a.  Under the supervision of the Secretary of the Military Department concerned, the DES consists of:

(1)  Medical evaluation to include the MEB, impartial medical reviews, and rebuttal.

(2)  Disability evaluation to include the PEB and appellate review, counseling, case management, and final disposition.

b.  The Secretaries of the Military Departments:

(1)  Will use the LDES process for non-duty-related disability cases and for Service members who entered the DES prior to the IDES being implemented at a given MTF.

(2)  Subject to the written approval of the USD(P&R), may also use the LDES process for Service members who are in initial entry training status, including trainees, recruits, cadets, and midshipmen.  Secretaries of the Military Departments who enroll initial entry trainees, recruits, cadets, and midshipmen in the LDES must offer to enroll these Service members in the VA Benefits Delivery at Discharge or Quick Start programs.

(3)  Will use the EDES process for consenting Service members designated with a catastrophic illness or injury incurred in the line of duty.

(4)  May designate a Service member's condition as catastrophic if he or she has a permanent and severely disabling injury or illness that compromises the ability to carry out the activities of daily living.  Guidance for procedures unique to the EDES is available in Reference (u).

c.  Except for initial entry trainees, Military Academy cadets, and midshipmen entered into the LDES and catastrophically ill or injured Service members entered in the EDES, will use the IDES process for all newly initiated cases referred under the duty-related process (see Glossary).  Guidance for procedures unique to the IDES is available in Reference (q).

(1)  Will use the IDES process for all newly initiated cases referred under the duty-related process except for Service members approved for the LDES process.

(2)  For cases initiated on or after May 17, 2018, may either:

(a)  Authorize, if requested by a Service member (to include initial entry trainees, Military Academy cadets, and midshipmen), processing through the LDES rather than the IDES.

*DoDI 1332.18, August 5, 2014*

*Before the Secretary concerned approves such a request, the Service member must acknowledge, in writing, that he or she was offered the opportunity to receive a legal briefing regarding the procedural differences between the LDES and the IDES;*

> *(b)  Enroll Service members into the LDES after providing information to these Service members about the VA Benefits Delivery at Discharge program before enrollment; or*

> *(c)  Use the LDES process for consenting Service members designated with a catastrophic illness or injury incurred in the line of duty.*

~~d.~~*c.  LDES and* IDES disability examinations will include a general medical examination and any other applicable medical examinations performed to VA compensation and pension standards.  Collectively, the *LDES and IDES* examinations will be sufficient to assess the Service member's referred and claimed condition(s), assist VA in ratings determinations and assist Military Departments to determine if the medical conditions, individually or collectively, prevent the Service member from performing the duties of his office, grade, rank, or rating.

2. <u>MEB</u>

    a. <u>Purpose</u>.  An MEB *reviews all available medical evidence, to include any examinations completed as a part of DES processing, and* documents the medical status and duty limitations of Service members who meet referral eligibility criteria in Appendix 1 to this enclosure.

    b. <u>Composition</u>.  The MEB will be comprised of two or more physicians (civilian employee or military).  One of these physicians must have detailed knowledge of the standards pertaining to medical ~~fitness~~ *retention standards*, the disposition of patients, and disability separation processing.  Any MEB listing a behavioral health diagnosis must contain a thorough behavioral health evaluation and include the signature of at least one psychiatrist or psychologist with a doctorate in psychology.

    c. <u>Resourcing</u>.  The Secretary of the Military Department concerned will develop standards on the maximum number of MEB cases that are pending before a MEB at any one time.

    d. <u>Referral to PEB</u>.  The MEB documents whether the Service member has ~~a~~ medical condition*s, whether singularly, collectively or through combined effect,* that will prevent them from reasonably performing the duties of their office, grade, rank, or rating.  If the Service member cannot perform the duties of his office, grade, rank, or rating*,* the MEB refers the case to the PEB.

    e. <u>Service Member Medical Evaluations</u>

        (1) <u>Medical Evaluations</u>.  An MEB will evaluate the medical status and duty limitations of:

(a)  Service members referred into the DES who incurred or aggravated an illness or injury while under order to active duty specifying a period of more than 30 days.

(b)  RC members referred for a duty-related determination.

(2)  <u>MEB Exemptions</u>.  An MEB is not required:

(a)  For Service members temporarily retired for disabilities who are due for a periodic physical medical examination.

(b)  When an RC member *who is not on active duty* is referred for ~~impairments~~ *conditions* unrelated to military status and performance of duty (see Glossary for the definition of non-duty-related ~~impairments~~ *condition*).

(3)  <u>MEB Prerequisites</u>.  A Service member will not be required to sign a statement relating to the origin, incurrence, or aggravation of a disease or injury.

(4)  <u>Impartial Medical Reviews</u>.  Consistent with section 1612 of Public Law 110-181 (Reference (~~vad~~)), the Secretary of the Military Department concerned will, upon request of the Service member, assign an impartial physician or other appropriate health care professional who is independent of the MEB to:

(a)  Serve as an independent source of review of the MEB findings and recommendations.

(b)  Advise and counsel the Service member regarding the findings and recommendations of the MEB.

(c)  Advise the Service member on whether the MEB findings adequately reflect the complete spectrum of the Service member's injuries and illnesses.

(5)  <u>MEB Rebuttal</u>.  Service members referred into the DES will upon request be permitted to at least one rebuttal of the MEB findings.

f.  <u>Content</u>

(1)  Medical information used in the DES must be sufficiently recent to substantiate the existence or severity of potentially unfitting conditions.  The Secretaries of the Military Departments will not perform additional medical exams or diagnostic tests if more current information would not substantially affect identification of the existence or severity of potentially unfitting conditions.

(2)  MEBs will confirm the medical diagnosis for and document the full clinical information, including history, treatment status, and potential for recovery of the Service member's medical conditions that, individually or collectively *or through combined effect,* ~~may~~

*will* prevent the Service member from performing the duties of his office, grade, rank, or rating and state whether each condition is cause for referral to a PEB.

g. <u>Competency</u>.  When the Service member's ability to handle his or her financial affairs is unclear, the MEB or TDRL packet will include the results of a competency board.

h. <u>Medical Documentation for RC Members with Non-duty Related Conditions</u>.  The medical documentation for RC members with non-duty related conditions referred for disability evaluation must provide clear and adequate written description of the medical condition(s) that, individually or collectively, may prevent the RC member from performing the duties of his office, grade, rank, or rating.

i. <u>Non-medical Documentation</u>.  The MTF will forward the cases of Service members with a duty-related determination to the PEB with the MEB documentation and:

(1)  The line of duty (LOD) determination, when required by section 6 of Appendix 3 of this enclosure.

(2)  Except in cases in which the illness or injury is so severe that return to duty is not likely, a statement from the Service member's immediate commanding officer describing the impact of the member's medical condition on the ability to perform his or her normal military duties.

(3)  An official document identifying the next of kin, court-appointed guardian, or trustee when a Service member is determined incompetent to manage his or her financial affairs.

3. <u>DISABILITY EVALUATION</u>

a. <u>Purpose</u>.  PEBs determine the fitness of Service members with medical conditions to perform their military duties and, for members determined unfit because of duty-related ~~impairments~~ *conditions*, their eligibility for benefits pursuant to chapter 61 of Reference (c).  Service members may appeal the decision of the PEB.  The PEB process includes the informal physical evaluation board (IPEB), formal physical evaluation board (FPEB) and appellate review of PEB results.

b. <u>IPEB</u>.  The IPEB reviews the case file to make initial findings and recommendations without the Service member present.  The Service member may accept the finding, rebut the finding, or request a FPEB.  The Secretary of the Military Department concerned will allow the Service member a minimum of 10 calendar days from receipt of the informal findings to rebut the findings of the IPEB or request an FPEB.  In addition to this timeline, Military Departments must publish timelines for presentation and consideration of cases.

c. <u>FPEB</u>.  In accordance with section 1214 of Reference (c), Service members who are found unfit are entitled to a formal hearing, an FPEB, to contest their IPEB findings.  The PEBLO will document the Service member's declination of an FPEB.  If the Secretary of the Military

*DoDI 1332.18, August 5, 2014*

Department concerned changes those findings or determinations following a Service member's concurrence, the Service member will be entitled to a formal hearing to contest the changes.

    d.  <u>Composition</u>

       (1)  The IPEB will be comprised of at least two military personnel at field grade or civilian equivalent or higher.  In cases of a split opinion, a third voting member will be assigned to provide the majority vote.

       (2)  The FPEB must be comprised of at least three members and may be comprised of military and civilian personnel representatives.  A majority of the FPEB members could not have participated in the adjudication process of the same case at the Informal Physical Evaluation Board.

         (a)  The FPEB will consist of at least a president, who should be a military ~~0-6~~ *O-6*, or civilian equivalent; a medical officer; and a line officer (or non-commissioned officer at the E-9 level for enlisted cases) familiar with duty assignments.

         (b)  The physician cannot be the Service member's physician, cannot have served on the Service member's MEB, and cannot have participated in a TDRL re-examination of the Service member.

         (c)  In the case of RC members, Secretaries of the Military Departments will ensure RC representation on the PEBs is consistent with section 12643 of Reference (c) and related policies.  Secretaries of the Military Departments may adjust member composition of the FPEB to enhance the adjudication process consistent with applicable laws and regulations.

         (d)  Contract personnel may not serve as PEB adjudicators or PEB appellate review members.

    e.  <u>Eligibility</u>.  Service members determined unfit and TDRL members determined fit may demand, and are entitled to, an FPEB.  At its discretion, the Military Department may grant a formal hearing to Service members who are determined fit but are not on the TDRL.

    f.  <u>Resourcing</u>.  The Secretary of the Military Department concerned will direct the allocation of additional personnel to the PEB process if deemed appropriate for proper and expeditious adjudication of case load.

    g.  <u>Issues</u>.  At the FPEB, the Service member will be entitled to address issues pertaining to his or her fitness, the percentage of disability, degree or stability of disability, administrative determinations, or a determination that his or her injury or disease was non-duty related.

    h.  <u>Hearing Rights</u>.  Service members will have, at a minimum, the following rights before the FPEB:

*DoDI 1332.18, August 5, 2014*

(1)  To have their case considered by board members, a majority of whom were not voting members of their IPEB.

(2)  To appear personally, through a designated representative, by videoconference, or by any other means determined practical by the Secretary of the Military Department concerned. Unless the Secretary of the Military Department directs the FPEB to fund the personal travel and other expenses, RC members with non-duty related determinations are responsible for their personal travel and other expenses.

(3)  To be represented by Government appointed counsel provided by the Military Department.  Service members may choose  their own civilian counsel at no expense to the Government.  The PEB president should notify the Secretary of the Military Department concerned if the lack of Government appointed counsel affects timely PEB caseload adjudication.

(4)  To make a sworn or an unsworn statement.  A Service member will not be required to sign a statement relating to the origin, incurrence, or aggravation of a disease or injury.

(5)  To remain silent.  When the Service member exercises this right, the member may not selectively respond, but must remain silent throughout the hearing.

(6)  To introduce witnesses, depositions, documents, sworn or unsworn statements, declarations, or other evidence in the Service member's behalf and to question all witnesses who testify at the hearing.  The FPEB president determines whether witnesses are essential.  If the FPEB president determines witnesses essential, travel expenses and per diem may be reimbursed or paid in accordance with the Joint ~~Federal~~ Travel Regulation, Volumes 1 and 2 (References (~~zae~~) and (~~aa~~*af*)).  Witnesses not deemed essential by the FPEB president may attend formal hearings at no expense to the Government.

(7)  To access all records and information received by the PEB before, during, and after the formal hearing.

i.  <u>Record of Proceedings</u>.  ~~Upon a Service member's written request, the~~ *The* Military Department will provide the Service member a record of the PEB proceedings.  The PEB record of proceedings must convey the PEB findings and conclusions in an orderly and itemized fashion, with specific attention to each issue presented by the Service member regarding his or her case, and the basis for applying total or extra-schedular ratings or unemployability determinations, as applicable.

j.  <u>Duty-related Determinations</u>.  The record of proceedings for active duty Service members and RC members referred for duty-related determinations will document, at a minimum:

(1)  The determination of fit or unfit.

(2)  The code and percentage rating assigned an unfitting and compensable disability based on the VASRD.  The standards for determining compensable disabilities are specified in Appendix 3 of this enclosure.

(3)  The reason an unfitting condition is not compensable.

(a)  The specific accepted medical principle, as stated in Appendix 3 of this enclosure, for overcoming the presumption of service aggravation for all cases with a finding of preexisting condition without service aggravation.

(b)  The accepted medical principle justifying findings that an RC member performing inactive duty training (IDT), active duty training, or on active duty of 30 days or less, has a preexisting disability that was not permanently aggravated by service.

(c)  The rationale justifying findings that a disability that was incurred in the LOD prior to September 24, 1996, and that was not permanently service aggravated since September 23, 1996, was not the proximate result of military service.

(4)  For Service members being placed on the TDRL or permanently retired, the nature of the disability and the stability and permanency of the disability.

(5)  Administrative determinations made consistent with Appendix 5 of this enclosure.

(6)  The record of all proceedings for PEB evaluation including the evidence used to overcome a presumption listed in this instruction and changes made as a result of review by subsequent reviewing authority will include a written explanation in support of each finding and recommendation.  If applicable, the basis for applying or not applying total or extra-schedular ratings or unemployability determinations.

k.  <u>Non-duty Related Determinations</u>.  For RC members referred for non-duty related determinations, the record of proceedings will document only:

(1)  The fitness determination.

(2)  For RC members determined fit, a determination of whether the member is deployable, if Service regulations require such a determination.

l.  <u>Appellate Review</u>.  The Military Department will review the findings and recommendations of the FPEB when requested by the Service member or designated representative or as required by the regulations of the Military Department concerned.  The Military Department will also provide to the Service member a written response to an FPEB appeal that specifically addresses each issue presented in the appeal.

m.  <u>Quality Assurance</u>.  Each Military Department will establish and publish quality review procedures particular to the PEB and conduct quality assurance reviews in accordance with the laws, directives, and regulations governing disability evaluation.

4.  <u>COUNSELING</u>

   a.  <u>Purpose</u>.  Service members undergoing evaluation by the DES must be advised of the significance and consequences of the determinations being made and their associated rights, benefits, and entitlements.  Each Military Department will publish and provide standard information booklets that contain specific information on the MEB and PEB processes.  These publications must include the rights and responsibilities of the Service member while navigating through the DES.  The information will be made available at the servicing MTFs and PEBs.

   b.  <u>Topics</u>

      (1)  PEBLOs will inform Service members of the:

         (a)  Sequence and nature of the steps in the disability process.

         (b)  Statutory rights and requirements but will not provide legal advice.

         (c)  Effect of findings and recommendations.

         (d)  Process to submit rebuttals.

         (e)  Probable retired grade.

         (f)  Estimated timeframe for completing the DES at their installation.

      (2)  PEBLOs will inform Service members or refer them to the appropriate subject matter experts on:

         (a)  Potential veterans' benefits.

         (b)  Post-retirement insurance programs and the Survivor Benefit Plan in accordance with DoDD 1332.27 (Reference (~~ab~~*ag*)), if appropriate.

         (c)  Applicable transition benefits, in accordance with ~~DoDD~~ *DoDI* 1332.35 (Reference (~~ac~~*ah*)).

         (d)  Applicable standards detailed in the VASRD, which would have to be recognized to increase the percentage of disability, prior to acting on a Service member's request for a formal PEB.

         (e)  Services provided by military, veteran, or national service organizations.

         (f)  Electronic resources for ill and injured Service members such as National Resource Directory, eBenefits, etc.

(g)  Availability and processes for obtaining legal counsel to assist in rebutting or appealing MEB and PEB findings.

(h)  The appropriate Defense Finance and Accounting Service finance representative for payment calculations for severance pay or retirement pay.

c.  <u>Incompetent Service Members</u>.  When a Service member has been determined incompetent by a competency board, his or her designated representative (e.g., court appointed guardian, trustee, or primary next of kin) will be counseled and afforded the opportunity to assert the rights granted to the Service member, unless prohibited by law.

d.  <u>Pre-separation Counseling</u>.  Service members on orders to active duty for more than 30 days will not be separated or retired because of disability before completing pre-separation counseling pursuant to Reference (~~aeah~~).

5.  <u>CASE MANAGEMENT</u>

a.  Service members undergoing evaluation by the DES must be advised on the status of their case, issues that must be resolved for their case to progress, and expected time frame for completing DES at their installation.

b.  PEBLOs will contact Service members undergoing disability evaluation at least monthly and provide any necessary DES assistance.

6.  <u>FINAL DISPOSITION</u>.  After adjudicating all appeals, the personnel authorities specified in Appendix 6 to this enclosure will:

a.  Issue orders and instructions to implement the determination of the respective Service's final reviewing authority.

b.  Consider Service member requests to continue on active duty or in the RC in a permanent limited duty status if the member is determined unfit.

7.  <u>ADMINISTRATIVE DECISIONS</u>

a.  The Secretary of the Military Department concerned may:

(1)  Direct the PEB to reevaluate any Service member determined to be unsuitable for continued military service.

(2)  Retire or separate for disability any Service member determined upon re-evaluation to be unfit to perform the duties of the member's office, grade, rank, or rating.

b.  The Secretary of the Military Department concerned may not:

(1)  Authorize the involuntary administrative separation of a member based on a determination that the member is unsuitable for deployment or worldwide assignment after a PEB has found the member fit for the same medical condition; or

(2)  Deny the member's request to reenlist based on a determination that the member is unsuitable for deployment or worldwide assignment after a PEB has found the member fit for the same medical condition.

c.  Consistent with DoDI 1332.14 (Reference (ad*ai*)), any Service member found fit for duty by the PEB but determined unsuitable for continued service by the Secretary of the Military Department concerned for the same medical condition considered by the PEB may appeal to the Secretary of Defense, who is the final authority.


8.  TRAINING AND EDUCATION

a.  <u>Assignment of Personnel to the DES</u>.  The Secretaries of the Military Departments will certify annually that the following personnel assigned to or impacting the DES were formally trained prior to being assigned to performing DES duties.

(1)  Medical officers.

(2)  PEBLOs.

(3)  Patient administration officers.

(4)  PEB adjudicators.

(5)  PEB appellate review members.

(6)  Judge advocates.

(7)  Military Department civilian attorneys.

b.  <u>Training</u>.  Training programs for all personnel assigned to the DES must be formal and documented.  At a minimum, training curricula will consist of:

(1)  An overview of the statutory and policy requirements of the DES, the electronic and paper recordkeeping policies of the Military Department, customer service philosophies, and VA processes, services and benefits.

(2)  Familiarization with medical administration processes.

(3)  Knowledge of online and other resources pertaining to the DES and DoD and VA services, the chain of supervision and command, and the Military Department Inspectors General hotlines for resolution of issues.

c.  <u>Mentoring</u>.  Individuals assigned for duty as PEBLOs must receive at least 1 week of on-the-job training with an experienced PEBLO.

Appendixes
1.  DES Referral
2.  Standards for Determining Unfitness Due to Disability or Medical Disqualification
3.  Standards for Determining Compensable Disabilities
4.  TDRL Management
5.  Administrative Determinations
6.  Final Disposition

*DoDI 1332.18, August 5, 2014*

APPENDIX 1 TO ENCLOSURE 3

DES REFERRAL

1. <u>GENERAL</u>.  The Secretary of the Military Department concerned will refer Service members who meet the criteria for disability evaluation regardless of eligibility for disability compensation.

2. <u>CRITERIA FOR REFERRAL</u>

   a.  When the course of further recovery is relatively predictable or within 1 year of diagnosis, whichever is sooner, medical authorities will refer eligible Service members into the DES who:

   (1)  Have one or more medical conditions that may, individually or collectively, prevent the Service member from reasonably performing the duties of their office, grade, rank, or rating including those duties remaining on a Reserve obligation for more than 1 year after diagnosis;

   (2)  Have a medical condition that represents an obvious medical risk to the health of the member or to the health or safety of other members; or

   (3)  Have a medical condition that imposes unreasonable requirements on the military to maintain or protect the Service member.

   b.  In all cases, competent medical authorities will refer into the DES eligible Service members who meet the criteria in paragraph ~~2a~~ *2.a. of this appendix* within 1 year of diagnosis.

3. <u>ELIGIBILITY FOR REFERRAL</u>

   a.  <u>Duty-related Determinations</u>.  Except as provided in section 4 of this appendix, the following categories of Service members who meet the criteria in section 2 of this appendix are eligible for referral to the DES for duty-related determinations:

   (1)  Service members on active duty or in the RC who are on orders to active duty specifying a period of more than 30 days.

   (2)  RC members who are not on orders to active duty specifying a period of more than 30 days but who incurred or aggravated a medical condition while the member was ordered to active duty for more than 30 days.

   (3)  Cadets at the United States Military Academy, the United States Air Force Academy, or Midshipmen of the United States Naval Academy.

(4)  Service members previously determined unfit, serving in a permanent limited duty status, and for whom the period of continuation has expired.

(5)  Other Service members who are on orders to active duty specifying a period of 30 days or less if they have a medical condition that was incurred or aggravated in the LOD while the Service member was:

(a)  Performing active duty or IDT.

(b)  Traveling directly to or from the place at which such duty is performed.

(c)  Remaining overnight immediately before the commencement of IDT or while remaining overnight between successive periods of IDT at or in the vicinity of the site of the IDT.

(d)  Serving on funeral honors duty pursuant to section 12503 of Reference (c) or section 115 of Title 32, U.S.C. (Reference (~~ae~~*aj*)) while the Service member was traveling to or from the place at which the member was to serve; or while the member remained overnight at or in the vicinity of that place immediately before serving.

(6)  Service members with duty-related determinations, as described in paragraph 3.a. of this appendix, will be referred into the DES for a determination of fitness.  If found unfit, a determination will be made as to the Service member's entitlement to separation or retirement for disability with benefits pursuant to chapter 61 of Reference (c) and administrative determinations in accordance with Appendix 5 to this enclosure.

(7)  A member of a*n* RC who is ordered to active duty for a period of more than 30 days and is released from active duty within 30 days of commencing such period of active duty for failure to meet physical standards for retention due to a pre-existing condition not aggravated during the period of active duty or medical or dental standards for deployment due to a pre-existing condition not aggravated during the period of active duty will be considered to have been serving under an order to active duty for a period of 30 days or less.

b.  <u>Non-duty Related Determinations</u>.  Members of the RC with non-duty related determinations, who are otherwise eligible as described in section 2 of this appendix, will be referred solely for a fitness for duty determination when one of the following exist:

(1)  The RC member does not qualify under paragraph ~~3a~~ *3.a.* of this appendix.

(2)  The RC member requests referral for a fitness determination upon being notified that they do not meet medical retention standards.

(3)  Service regulations direct the RC member be referred to the DES for a determination of fitness before being separated by the Reserve for not meeting medical retention standards.

4.  INELIGIBILITY FOR REFERRAL

    a.  Service members are ineligible for referral to the disability evaluation process when:

    (1)  The Service member has a condition, circumstance, or defect of a developmental nature, not constituting a physical disability, as described in paragraph ~~3i~~ *3.i.* above the signature of this instruction, that interferes with assignment to or performance of duty and that was not service aggravated.

    (2)  The Service member is pending an approved, unsuspended punitive discharge or dismissal, except as provided by Service regulations.

    (3)  The Service member is pending separation under provisions that authorize a characterization of service of under other than honorable conditions, except as provided by Service regulations.  This restriction is based on the provisions upon which the member is being separated and not on the actual characterization the member receives.

    (4)  The Service member is not physically present or accounted for.

    (5)  Disability results from intentional misconduct or willful neglect or was incurred during a period of unauthorized absence or excess leave.

    b.  However, the Secretaries of the Military Departments should normally evaluate for disability those Service members who would be ineligible for referral to the DES due to paragraphs ~~4a(2)~~ *4.a.(2)* and ~~4a(3)~~ *4.a.(3)* of this appendix when the medical ~~impairment~~ *condition* or disability evaluation is warranted as a matter of equity or good conscience.


5.  SERVICE MEMBERS WITH MEDICAL WAIVERS

    a.  Provided no permanent aggravation has occurred, Service members who enter the military with a medical waiver may be separated without disability evaluation when the responsible medical authority designated by Service regulations determines within 6 months of the member's entry into active service that the waivered condition represents a risk to the member or prejudices the best interests of the Government.

    b.  Once 6 months have elapsed the Secretary of the Military Department concerned will refer the Service member for disability evaluation when the Service member meets the criteria in section 2 of this appendix and is eligible for referral in accordance with section 3 of this appendix.

    c.  Members who entered the Service with a medical waiver for a pre-existing condition and who are subsequently determined unfit for the condition will not be entitled to disability separation or retired pay unless military service permanently aggravated the condition.  Members granted medical waivers will be advised of this provision at the time of waiver application and when it is granted.

6.  <u>WAIVER OF PEB EVALUATION</u>.  Except as prohibited by section 7 of this appendix, Service members may waive referral to the PEB with the approval of the Secretary of the Military Department concerned.

   a.  The Service member must be counseled on the DES process, the right to a PEB, and the potential benefits of remaining in an active duty or active reserve status to complete evaluation by the DES.

   b.  The Service member must request a waiver in writing and such request or an affidavit must attest that the member has received the counseling described and declines referral to the PEB.

7.  <u>PROHIBITION FROM WAIVING DISABILITY EVALUATION</u>.  A Service member approved for voluntary early separation from active duty who incurs a Reserve obligation and who has conditions that are cause for referral into the DES cannot waive disability evaluation.

8.  <u>REFERRAL IMPLICATIONS</u>.  Neither referral into the DES nor a finding of unfitness constitutes entitlement to disability benefits.

*DoDI 1332.18, August 5, 2014*

APPENDIX 2 TO ENCLOSURE 3

STANDARDS FOR DETERMINING UNFITNESS DUE TO
DISABILITY OR MEDICAL DISQUALIFICATION

1.  UNIFORMITY OF STANDARDS.  The standards listed in this instruction for determining
unfitness due to disability will be followed unless the USD(P&R) approves exceptions on the
basis of the unique needs of the respective Military Department.

2.  GENERAL CRITERIA FOR MAKING UNFITNESS DETERMINATIONS

    a.  A Service member will be considered unfit when the evidence establishes that the
member, due to disability, is unable to reasonably perform duties of his or her office, grade, rank,
or rating, including those during a remaining period of Reserve obligation.

    b.  A Service member may also be considered unfit when the evidence establishes that:

        (1)  The Service member's disability represents a decided medical risk to the health of the
member or to the welfare or safety of other members; or

        (2)  The Service member's disability imposes unreasonable requirements on the military
to maintain or protect the Service member.

3.  RELEVANT EVIDENCE.  The Secretaries of the Military Departments will consider all
relevant evidence in assessing Service member fitness, including the circumstances of referral.
To reach a finding of unfit, the PEB must be satisfied that the evidence supports that finding.

    a.  Referral Following Illness or Injury.  When referral for disability evaluation immediately
follows acute, grave illness or injury, the medical evaluation may stand alone, particularly if
medical evidence establishes that continued service would be harmful to the member's health or
is not in the best interest of the respective Service.

    b.  Referral for Chronic ~~Impairment~~ *Condition*.  When a Service member is referred for
disability evaluation under circumstances other than as described in paragraph ~~3a~~ *3.a.* of this
appendix, an evaluation of the Service member's performance of duty by supervisors may more
accurately reflect the capacity to perform.  Supervisors may include letters, efficiency reports,
credential reports, status of physician medical privileges, or personal testimony of the Service
member's performance of duty to provide evidence of the Service member's ability to perform
his or her duties.

    c.  Cause-and-effect Relationship.  Regardless of the presence of illness or injury, inadequate
performance of duty, by itself, will not be considered evidence of unfitness due to disability,
unless a cause-and-effect relationship is established between the two factors.

4.  REASONABLE PERFORMANCE OF DUTIES

    a.  Considerations.  Determining whether a Service member can reasonably perform his or her duties includes consideration of:

    (1)  Common Military Tasks.  Whether the Service member can perform the common military tasks required for the Service member's office, grade, rank, or rating including those during a remaining period of Reserve obligation.  Examples include routinely firing a weapon, performing field duty, or wearing load-bearing equipment or protective gear.

    (2)  Physical Fitness Test.  Whether the Service member is medically prohibited from taking the respective Service's required physical fitness test.  When an individual has been found fit by a PEB for a condition that prevents the member from taking the Service physical fitness test, the inability to take the physical fitness test will not form the basis for an adverse personnel action against the member.

    (3)  Deployability.  Whether the Service member is deployable individually or as part of a unit, with or without prior notification, to any vessel or location specified by the Military Department.  When deployability is used by a Service as a consideration in determining fitness, the standard must be applied uniformly to both the AC and RC of that Service.

    (4)  Special Qualifications.  For Service members whose medical condition disqualifies them for specialized duties, whether the specialized duties constitute the member's current duty assignment; the member has an alternate branch or specialty; or reclassification or reassignment is feasible.

    b.  General, Flag, and Medical Officers.  An officer in pay grade O-7 or higher, or a medical officer in any grade, being processed for retirement by reason of age or length of service, will not be determined unfit unless the determination of the Secretary of the Military Department concerned with respect to unfitness is approved by the USD(P&R) on the recommendation of the ASD(HA).

    c.  Service Members on Permanent Limited Duty.  A Service member previously determined unfit and continued in a permanent limited duty status or otherwise continued on active duty will normally be found unfit at the expiration of his or her period of continuation.  However, the Service member may be determined fit when the condition has healed or improved such that the Service member would be capable of performing his or her duties in other than a limited-duty status.

    d.  Combined Effect.  A Service member may be determined unfit as a result of the combined effect of two or more ~~impairments~~ *conditions* even though each of them, standing alone, would not cause the Service member to be referred into the DES or be found unfit because of disability. *The PEB will include in its official findings, in cases where two or more medical conditions (referred or claimed) are present in the service treatment record, that the combined effect was*

*considered in the fitness determination as referred by the MEB.  Combined effect includes the pairing of a singularly unfitting condition with a condition that standing alone would not be unfitting.*

5.  <u>PRESUMPTION OF FITNESS</u>

    a.  <u>Application</u>.  The DES compensates disabilities when they cause or contribute to career termination.  Service members who are pending retirement at the time they are referred for disability evaluation are presumed fit for military service.

        (1)  Service members may overcome this presumption by presenting a preponderance of evidence that he or she is unfit for military service.  The presumption of fitness may be overcome when:

            (a)  An illness or injury occurs within the presumptive period that would prevent the Service member from performing further duty if they were not retiring.

            (b)  A serious deterioration of a previously diagnosed condition, including a chronic one, occurs within the presumptive period, and the deterioration would preclude further duty if the Service member were not retiring.

            (c)  The condition for which the Service member is referred is a chronic condition and a preponderance of evidence establishes that the Service member was not performing duties befitting either his or her experience in the office, grade, rank, or rating before entering the presumptive period because of the condition.

        (2)  Service members are not presumed fit for military service in these instances of a pending retirement:

            (a)  The disability is one for which a Service member was previously determined unfit and continued in a permanent limited duty status.  The presumption of fitness will be applied to other medical ~~impairments~~ *conditions* unless the medical evidence establishes they were impacted by the original unfitting disabilities.

            (b)  Selected Reserve members who are eligible to qualify for non-regular retirement pursuant to the provisions of section 12731b of Reference (c).

            (c)  RC members referred for non-duty-related determinations.

    b.  <u>Presumptive Period</u>.  The Secretaries of the Military Departments will presume Service members are pending retirement when the ~~preparation of the Service member's MEB narrative summary~~ *Service member's referral into the DES* occurs after any of these circumstances:

*DoDI 1332.18, August 5, 2014*

(1)  A Service member's request for voluntary retirement has been approved.  Revocation of voluntary retirement orders for purposes of referral into the DES does not negate application of the presumption.

(2)  An officer has been approved for selective early retirement or is within 12 months of mandatory retirement due to age or length of service.

(3)  An enlisted member is within 12 months of his or her retention control point or expiration of active obligated service, but will be eligible for retirement at his or her retention control point or expiration of active obligated service.

(4)  An RC member is within 12 months of mandatory retirement or removal date and qualifies for a 20-year letter at the time of referral for disability evaluation.

(5)  A retiree is recalled, to include those who transferred to the Retired Reserve, with eligibility to draw retired pay upon reaching the age prescribed by statute unless the recalled retiree incurred or aggravated the medical condition while on their current active duty orders and overcomes the presumption of fitness.

6.  EVIDENTIARY STANDARDS FOR DETERMINING UNFITNESS BECAUSE OF DISABILITY

a.  Objective Evidence

(1)  The Secretary of the Military Department concerned must cite objective evidence in the record, as distinguished from personal opinion, speculation, or conjecture, to determine a Service member is unfit because of disability.

(2)  Doubt that cannot be resolved with evidence will be resolved in favor of the Service member's fitness through the presumption that the Service member desires to be found fit for duty.

b.  Preponderance of Evidence.  With the exception of presumption of fitness cases, the Secretary of the Military Department concerned will determine fitness or unfitness for military service on the basis of the preponderance of the objective evidence in the record.

*DoDI 1332.18, August 5, 2014*

APPENDIX 3 TO ENCLOSURE 3

STANDARDS FOR DETERMINING COMPENSABLE DISABILITIES

1.  <u>OVERVIEW OF DISABILITY COMPENSATION CRITERIA</u>.  Service members who are determined unfit to perform the duties of the member's office, grade, rank, or rating because of disability in accordance with Appendix 2 of this enclosure may be eligible for disability benefits when:

    a.  The disability is not the result of the member's intentional misconduct or willful neglect and was not incurred during unauthorized absence or excess leave.

    b.  The Service member incurred or aggravated the disability while he or she was:

        (1)  A member of a regular component of the Military Services entitled to basic pay;

        (2)  A member of the Military Services entitled to basic pay, called or ordered to active duty (other than for training pursuant to section 10148 of Reference (c)) for a period of more than 30 days;

        (3)  A member of the Military Services on active duty for a period greater than 30 days but not entitled to basic pay pursuant to section 502(b) of Title 37, U.S.C. (Reference (~~af~~*ak*)) due to authorized absence to participate in an educational program or for an emergency purpose, as determined by the Secretary of the Military Department concerned;

        (4)  A cadet at the United States Military Academy or the United States Air Force Academy or a midshipman of the United States Naval Academy after October 28, 2004; or

        (5)  A member of the Military Services called or ordered to active duty for a period of 30 days or less, performing IDT or traveling directly to or from the place of IDT, to funeral honors duty, or for training pursuant to section 10148 of Reference (c).

2.  <u>DISABILITY RETIREMENT CRITERIA FOR REGULAR COMPONENT MEMBERS AND MEMBERS ON ACTIVE DUTY FOR MORE THAN 30 DAYS</u>.  Service members described in paragraphs ~~1a~~ *1.a.* and ~~1b(1)~~ *1.b.(1)* through ~~1b(4)~~ *1.b.(4)* of this appendix will be retired with disability benefits when:

    a.  The disability is permanent and stable.

    b.  The member has:

        (1)  At least 20 years of service computed in accordance with section 1208 of Reference (c); or

(2)  A disability of at least 30 percent, pursuant to Reference (~~t~~*v*), and that disability:

(a)  Was not noted at the time of the member's entrance on active duty unless the Secretary of the Military Department concerned demonstrates with clear and unmistakable evidence that the disability existed before the member's entrance on active duty and was not aggravated by active military service;

(b)  Is the proximate result of performing active duty;

(c)  Was incurred in the LOD in time of war or national emergency; or

(d)  Was incurred in the LOD after September 14, 1978.


3.  <u>DISABILITY RETIREMENT CRITERIA FOR MEMBERS ON ACTIVE DUTY FOR 30 DAYS OR LESS, ON IDT, FUNERAL HONORS DUTY, OR TRAINING PURSUANT TO SECTION 10148 OF REFERENCE (C)</u>.  Service members described in paragraphs ~~1a~~ *1.a.* and ~~1b(5)~~ *1.b.(5)* of this appendix will be retired with disability benefits when:

a.  The disability is permanent and stable.

b.  The Service member has:

(1)  At least 20 years of service computed in accordance with section 1208 of Reference (c); or

(2)  A disability of at least 30 percent, pursuant to Reference (~~t~~*u*), and that disability meets at least one of the following criteria:

(a)  The disability was incurred or aggravated before September 24, 1996, as the proximate result of:

<u>1</u>.  Performing active duty or IDT;

<u>2</u>.  Traveling directly to or from the place of active duty or IDT; or

<u>3</u>.  An injury, illness, or disease incurred or aggravated immediately before the commencement of IDT or while remaining overnight, between successive periods of IDT, at or in the vicinity of the site of the IDT, if the site of the IDT is outside reasonable commuting distance of the Service member's residence.

(b)  The disability is a result of injury, illness, or disease that was incurred or aggravated in the LOD after September 23, 1996:

<u>1</u>.  While performing active duty or IDT;

2.  While traveling directly to or from the place of active duty or IDT;

3.  While remaining overnight immediately before the commencement of IDT; or

4.  While remaining overnight between successive periods of IDT at or in the vicinity of the site of the IDT.

(c)  The disability is a result of an injury, illness, or disease incurred or aggravated in the LOD:

1.  While serving on funeral honors duty pursuant to section 12503 of Reference (c) or section 115 of Reference (~~ae~~*aj*);

2.  While the Service member was traveling to or from the place at which the member was to serve; or

3.  While the Service member remained overnight at or in the vicinity of that place immediately before serving, if it is outside reasonable commuting distance from the member's residence.

4.  <u>DISABILITY SEPARATION CRITERIA FOR REGULAR COMPONENT MEMBERS AND MEMBERS ON ACTIVE DUTY FOR MORE THAN 30 DAYS</u>.  Service members described in paragraphs ~~1a~~ *1.a.* and ~~1b(1)~~ *1.b.(1)* through ~~1b(4)~~ *1.b.(4)* of this appendix will be separated with disability benefits when:

a.  The Service member has less than 20 years of service.

b.  The disability meets one of the following criteria:

(1)  Is or may be permanent and less than 30 percent, pursuant to Reference (~~t~~*v*), and:

(a)  Is the proximate result of performing active duty;

(b)  Was incurred in the LOD in time of war or national emergency; or

(c)  Was incurred in the LOD after September 14, 1978.

(2)  Is less than 30 percent, pursuant to Reference (~~t~~*v*), at the time of the determination and was not noted at the time of the Service member's entrance on active duty (unless clear and unmistakable evidence demonstrates the disability existed before the Service member's entrance on active duty and was not aggravated by active military service).

(3)  Is at least 30 percent, pursuant to Reference (~~t~~*v*), and at the time of the determination, the disability was neither:

(a)  The proximate result of performing active duty;

(b)  Incurred in the LOD in time of war or national emergency; nor

(c)  Incurred in the LOD after September 14, 1978, and the Service member had less than 8 years of service computed pursuant to section 1208 of Reference (c) on the date when he or she:

$\underline{1}$.  Would otherwise be retired pursuant to section 1201 of Reference (c); or

$\underline{2}$.  Was placed on the TDRL pursuant to section 1202 of Reference (c).

5.  <u>DISABILITY SEPARATION CRITERIA FOR MEMBERS ON ACTIVE DUTY FOR 30 DAYS OR LESS, ON IDT, FUNERAL HONORS DUTY, OR TRAINING PURSUANT TO SECTION 10148 OF REFERENCE (C)</u>

a.  Service members described in paragraphs ~~1a~~ *1.a.* and ~~1b(5)~~ *1.b.(5)* of this appendix will be separated with disability benefits when:

(1)  The Service member has less than 20 years of service.

(2)  The disability meets one of the following criteria:

(a)  Is or may be permanent.

(b)  Is the result of an injury, illness, or disease incurred or aggravated in line of duty while:

$\underline{1}$.  Performing active duty or IDT;

$\underline{2}$.  Traveling directly to or from the place of active duty;

$\underline{3}$.  Remaining overnight immediately before the commencement of IDT, between successive periods of IDT, at or in the vicinity of the site of the IDT if the site is outside reasonable commuting distance of the Service member's residence; or

$\underline{4}$.  Serving on funeral honors duty pursuant to section 12503 of Reference (c) or section 115 of Reference (~~ac~~*ai*) while the Service member was traveling to or from the place at which he or she was to serve; or while the Service member remained overnight at or in the vicinity of that place immediately before serving.

(c)  Is less than 30 percent under the VASRD at the time of the determination and, in the case of a disability incurred before October 5, 1999, was the proximate result of performing active duty or IDT or of traveling directly to or from the place at which such duty is performed.

b.  If the Service member is eligible for transfer to the inactive status list pursuant to section 1209 of Reference (c) and chooses to, he or she may be transferred to that list instead of being separated.


6.  <u>LOD REQUIREMENTS</u>.  In the DES, LOD determinations assist the PEB and appellate review authority in meeting the statutory requirements under chapter 61 of Reference (c) for separation or retirement for disability.

a.  <u>Relationship of LOD Findings to DES Determinations</u>

(1)  LOD determinations will be made in accordance with the regulations of the respective Military Department.  When an LOD determination is required, the DES will consider the finding made for those issues mutually applicable to LOD and DES determinations.  These issues include whether a condition is pre-existing and whether it is aggravated by military service and any issues of misconduct or negligence.

(2)  When the PEB has reasonable cause to believe an LOD finding appears to be contrary to the evidence, disability evaluation will be suspended for a review of the LOD determination in accordance with Service regulations.  The PEB will forward the case to the final LOD reviewing authority designated by the Secretary of the Military Department concerned with a memorandum documenting the reasons for questioning the LOD finding.

b.  <u>Referral Requirement</u>.  When an LOD determination is required, it will be done before sending a Service member's case to the PEB.

c.  <u>Presumptive Determinations</u>.  The determination is presumed to be in the LOD without an investigation in the case of:

(1)  Disease, except as described in paragraphs ~~6e(1) to 6e(6)~~ *6.d.(1) to 6.d.(6)* of this appendix.

(2)  Injuries clearly incurred as a result of enemy action or attack by terrorists.

(3)  Injuries while a passenger in a common commercial or military carrier.

d.  <u>Required Determinations</u>.  At a minimum, LOD determinations will be required in these circumstances.

(1)  Injury, disease, or medical condition that may be due to the Service member's intentional misconduct or willful negligence, such as a motor vehicle accident.

(2)  Injury involving the abuse of alcohol or other drugs.

(3)  Self-inflicted injury.

(4)  Injury or disease possibly incurred during a period of unauthorized absence.

(5)  Injury or disease apparently incurred during a course of conduct for which charges have been preferred.

(6)  Injury, illness, or disease of RC members on orders specifying a period of active duty of 30 days or less while:

(a)  Performing active duty or IDT;

(b)  Traveling directly to or from the place of active duty;

(c)  Remaining overnight immediately before the commencement of IDT, between successive periods of IDT, at or in the vicinity of the site of the IDT if the site is outside reasonable commuting distance of the Service member's residence; or

(d)  Serving on funeral honors duty pursuant to section 12503 of Reference (c) or section 115 of Reference (~~ae~~*ai*) while the Service member was traveling to or from the place at which he or she was to serve; or while the Service member remained overnight at or in the vicinity of that place immediately before serving.


7.  <u>EVIDENTIARY STANDARDS FOR DETERMINING COMPENSABILITY OF UNFITTING CONDITIONS</u>

a.  <u>Misconduct and Negligence</u>.  LOD determinations concerning intentional misconduct and willful negligence will be judged by the evidentiary standards established by the Secretary of the Military Department concerned.

b.  <u>Presumption of Sound Condition for Members on Continuous Orders to Active Duty Specifying a Period of More Than 30 Days</u>

(1)  The Secretaries of the Military Departments will presume Service members, including RC members and recalled retirees, on continuous orders to active duty specifying a period of more than 30 days entered their current period of military service in sound condition when the disability was not noted at the time of the Service member's entrance to the current period of active duty.

(2)  The Secretaries of the Military Departments may overcome this presumption if clear and unmistakable evidence demonstrates that the disability existed before the Service member's entrance on their current period of active duty and was not aggravated by their current period of military service.  Absent such clear and unmistakable evidence, the Secretary of the Military Department concerned will conclude that the disability was incurred or aggravated during their current period of military service.

(3)  The Secretary of the Military Department concerned must base a finding that the Service member's condition was not incurred in or aggravated by their current period of military service on objective evidence in the record, as distinguished from personal opinion, speculation, or conjecture.  When the evidence is unclear concerning whether the condition existed prior to their current period of military service or if the evidence is equivocal, the presumption of sound condition at entry to the current period of military service has not been rebutted and the Secretary of the Military Department concerned will find the Service member's condition was incurred in or aggravated by military service.

(4)  Any hereditary or genetic disease will be evaluated to determine whether clear and unmistakable evidence demonstrates the disability existed before the Service member's entrance on active duty and was not aggravated by their current period of military service.  However, even if the disability is determined to have been incurred prior to entry on their current period of active duty, any aggravation of that disease, incurred during the Service member's current period of active duty, beyond that determined to be due to natural progression will be determined to be service-aggravated.

(5)  There is no presumption of sound condition for RC members serving on orders of 30 days or less.

c.  Presumption of Incurrence or Aggravation in the LOD for Members on Continuous Orders to Active Duty Specifying a Period of More Than 30 Days

(1)  The Secretaries of the Military Departments will presume that diseases or injuries incurred by Service members on continuous orders to active duty specifying a period of more than 30 days were incurred or aggravated in the LOD unless the disease or injury was noted at time of entry into service.  The Secretaries of the Military Departments may overcome the presumption that a disease or injury was incurred or aggravated in the LOD only when clear and unmistakable evidence indicates the disease or injury existed prior to their current period of military service and was not aggravated by their current period of military service.

(2)  There is no presumption of incurrence or aggravation in the LOD for RC members serving on orders of 30 days or less.

(32)  Pursuant to the provisions of sections 1206(a) and 1207(a) of Reference (c), a preexisting condition is deemed to have been incurred while entitled to basic pay and will be considered for purposes of determining whether the disability was incurred in the LOD when:

(a)  The Service member was ordered to active duty for more than 30 days (other than for training pursuant to section 10148(a) of Reference (c)) when the disease or injury was determined to be unfitting as subsequently determined by the PEB.

(b)  The Service member was not a member of the RC released within 30 days of his or her orders to active duty in accordance with section 1206a of Reference (c) due to the identification of a preexisting condition not aggravated by the current call to duty.

(c)  The Service member will have a career total of at least 8 years of active service at the time of separation.

(d)  The disability was not the result of intentional misconduct or willful neglect or was incurred during a period of unauthorized absence.

d.  <u>RC Members Serving on Orders of 30 Days or Less</u>.

*(1)*  The Secretary of the Military Department concerned will determine if injuries and diseases to RC members serving on orders of 30 days or less were incurred or aggravated in the LOD as described in section 4 of this appendix.

*(2)*  For RC members being examined in accordance with section 3 of this appendix, aggravation must constitute the worsening of a preexisting medical condition as a direct result of military duty and over and above the natural progression of the condition.

*(3)  There is no presumption of incurrence or aggravation in the LOD for RC Service members serving on orders of 30 days or less.*

e.  <u>Prior Service ~~Impairment~~ *Condition*</u>.  Any medical condition incurred or aggravated during one period of active service or authorized training in any of the Military Services that recurs, is aggravated, or otherwise causes the member to be unfit, should be considered incurred in the LOD, provided the origin of such ~~impairment~~ *condition* or its current state is not due to the Service member's misconduct or willful negligence, or progressed to unfitness as the result of intervening events when the Service member was not in a duty status.

f.  <u>Medical Waivers</u>

(1) Service members who entered the Military Service with a medical waiver for a preexisting condition and are subsequently determined unfit for the condition will not be entitled to disability separation or retired pay unless:

(a)  Military service permanently aggravated the condition or hastened the condition's rate of natural progression; or

(b)  The member will have 8 years of active service at the time of separation.

(2)  Service members granted medical waivers will be advised of the waiver application process when applying for a waiver and when it is granted.

g.  <u>Treatment of Pre-existing Conditions</u>.  Generally recognized risks associated with treating preexisting conditions will not be considered service aggravation.  Unexpected adverse events, over and above known hazards, directly attributable to treatment, anesthetic, or operation performed or administered for a medical condition existing before entry on active duty, may be considered service aggravation.

*DoDI 1332.18, August 5, 2014*

    h.  <u>Elective Surgery or Treatment</u>.  A Service member choosing to have elective surgery or treatment done at his or her own expense will not be eligible for compensation in accordance with the provisions of this instruction for any adverse residual effect resulting from the elected treatment, unless it can be shown that such election was reasonable or resulted from a significant impairment of judgment that is the product of a ratable medical condition.

    i.  <u>Rating Disabilities</u>.  When a disability is established as compensable, it will be rated in accordance with Reference (tv).  When after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability, such doubt will be resolved in favor of the Service member.

APPENDIX 4 TO ENCLOSURE 3

TDRL MANAGEMENT

1.  <u>INITIAL PLACEMENT ON THE TDRL</u>

    a.  A Service member will be placed on the TDRL when the member meets the requirements for permanent disability retirement except that the disability is not determined to be stable but may be permanent.  A disability will be determined stable when the preponderance of medical evidence indicates the severity of the condition will probably not change enough within the next *5 3* years to increase or decrease the disability rating percentage, *pursuant to section 1210 of Reference (c)*.

    b.  Service members with unstable conditions rated at a minimum of 80 percent that are not expected to improve to less than an 80 percent rating will be permanently retired.

2.  <u>TDRL RE-EVALUATION</u>.  The TDRL will be managed to meet the requirements for periodic disability examination, suspension of retired pay, and prompt removal from the TDRL pursuant to chapter 61 of Reference (c), including the reexamination of temporary retirees at least once every 18 months to determine whether there has been a change in the disability for which the member was temporarily retired.

    a.  <u>Initiating the TDRL Re-evaluation Process</u>.  No later than 16 months after temporarily retiring a Service member for disability or after his or her previous re-evaluation, the Military Department will obtain and review available DoD medical treatment documentation and VA or veteran-provided medical treatment, or disability examination that occurred within 16 months of being placed on the TDRL, and rating documentation.  If the documents reviewed are deemed sufficient and consistent with the requirements of chapter 61, of Reference (c), the Military Department may rely on that documentation to determine whether there has been a change in disability for which the Service member was temporarily retired.  The PEB will review the available evidence to determine if the documentation is sufficient to:

        (1)  Fully describe each disability that the Secretary of the Military Department concerned determined was unfitting and may be permanent but was unstable at the time the Service member was placed on the TDRL, the current status of such disabilities, the progress of the disability and a suggested time frame (not to exceed 18 months) for the next examination.

        (2)  Fully describe, including treatment and etiology, any new disability that was caused by or directly related to the treatment of a disability for which the Service member was previously placed on the TDRL.

    b.  <u>Conduct of Disability Re-examinations</u>.  If the Military Department determines the available medical records and examination reports, including those available from VA, do not meet the requirements in paragraphs *2a(1) 2.a.(1)* and *2a(2) 2.a.(2)* of this appendix, the Military

Department will comply with their responsibilities in chapter 61 of Reference (c) regarding the TDRL, to include performing TDRL examinations that meet the requirements of paragraph ~~2a(1)~~ *2.a.(1)* and ~~2a(2)~~ *2.a.(2)* of this appendix.

   c. <u>PEB Re-adjudication</u>.  The Military Department will request that VA provide their most current rating and medical evidence upon which the most current rating was based for the condition for which the veteran was placed on the TDRL.  The PEB ~~may use~~ *will consider* the future examination requirements set by the disability rating activity site (D-RAS) as an indicator of stability when making the recommendations of stability determinations and case disposition to the Secretary of the Military Department.  If the PEB decides to continue a Service member on temporary retirement for disability for which the D-RAS has not scheduled a future examination, the Military Department will execute required TDRL examinations and ratings in accordance with chapter 61 of Reference (c).

   d. <u>PEB Disposition</u>

      (1)  If the PEB finds the veteran fit for duty for the condition(s) for which he or she was placed on the TDRL; that the condition(s) is now stable; and the veteran wishes to return to active duty, the Military Department will administer any additional examinations required to evaluate whether the veteran is otherwise fit for duty in accordance with the Military Department's regulations and the guidance in this instruction.  The Military Department will administer other dispositions in accordance with the guidance in this instruction.

      (2)  If upon re-evaluation while on the TDRL, the Service member is still found unfit ~~for~~ *due to* the unstable condition for which he or she was placed on the TDRL, evaluation of other conditions is not required.  If the Service member is no longer found unfit for the unstable condition for which he or she was placed on the TDRL, an assessment will be made as to whether any other condition exists that would prevent a return to duty.  If other conditions exist that render the Service member unfit, a determination will be made that the condition is unfitting but not compensable in the DES.

   e. <u>Cases on VA Appeal</u>.  When a Service member who was temporarily retired for disability has appealed a VA decision and the appeal resides with the Board of Veterans Appeals or Court of Appeals for Veterans' Claims, the Military Department will obtain from the VA a copy of the most current rating and medical evidence available.

      (1)  The Military Department will obtain and review the available DoD and the VA medical treatment and disability examination documentation available for the condition for which the Service member was placed on the TDRL.

      (2)  The Military Department will review the available medical evidence to determine if the documentation is sufficient to conduct the TDRL re-evaluation process without a disability examination of the Service member.

      (3)  If the PEB determines that the Service member requires an additional disability examination, the PEB will coordinate the actions needed to meet the statutory, 18-month

examination requirement in chapter 61 of Reference (c).  Upon receipt of all necessary medical evidence, the PEB will adjudicate the case.

f.  <u>Administrative Finality</u>.  During TDRL re-evaluation, as described in paragraph ~~2a~~ *2.a.* of this appendix, previous determinations concerning application of any presumption established by this instruction, LOD, misconduct, and whether a medical ~~impairment~~ *condition* was permanent, service-incurred, or preexisting and aggravated will be considered administratively final for conditions for which the Service member was placed on the TDRL unless there is:

(1)  Evidence of fraud.

(2)  A change of diagnosis that warrants the application of accepted medical principles for a preexisting condition.

(3)  A correction of error in favor of the Service member.

g.  <u>Required Determinations</u>.  The Secretary of the Military Department concerned will determine whether the conditions for which the Service member was placed on the TDRL are unfitting and compensable.  When, upon re-evaluation, a temporarily retired veteran is determined fit for the conditions for which he or she was placed on the TDRL and has no other DoD compensable disabilities, the veteran will be separated from the TDRL without entitlement to DoD disability benefits.

h.  <u>Service Member Medical Records</u>.  The Service member will provide to the examining physician, for submission to the PEB, copies of all his or her medical records (e.g., civilian, VA, and military) documenting treatment since the last TDRL re-evaluation.

i.  <u>Compensability of New Diagnoses</u>.  Conditions newly diagnosed during temporary retirement will be compensable when:

(1)  The condition is unfitting and;

(2)  The condition was caused by or directly related to the treatment of a condition for which the Service member was previously placed on the TDRL.

(3)  To correct an error in favor of the Service member, the Secretary of the Military Department concerned determines the condition was unfitting and compensable at the time the member was placed on the TDRL.

j.  <u>Current Physical Examination</u>.  Service members on the TDRL are not entitled to permanent retirement or separation with disability severance pay without a current periodic physical examination acceptable to the Secretary of the Military Department concerned as required by chapter 61 of Reference (c).

k.  <u>Refusal or Failure to Report</u>.  In accordance with chapter 61 of Reference (c), when a Service member on the TDRL refuses or fails to report for a required periodic physical

examination or provide his or her medical records in accordance with paragraph ~~2h~~ *2.h.* of this appendix, disability retired pay will be suspended.

(1)  If the Service member later reports for the physical examination, retired pay will be resumed effective on the date the examination was actually performed.

(2)  If the Service member subsequently shows just cause for failure to report, disability retired pay may be paid retroactively for a period not to exceed 1 year prior to the actual performance of the physical examination.

(3)  If the Service member does not undergo a periodic physical examination after disability retired pay has been suspended, he or she will be administratively removed from the TDRL on the ~~fifth~~ *third* anniversary of the original placement on the list.

l.  <u>Priority</u>.  TDRL examinations, including hospitalization in connection with the conduct of the examination, will be furnished with the same priority given to active duty members.

m.  <u>Reports From Non-MTFs</u>.  MTFs designated to conduct TDRL periodic physical examinations may use disability examination reports from any medical facility or physician.  The designated MTF remains responsible for the adequacy of the examination and the completeness of the report.  The report must include the competency information specified in paragraph ~~2e~~ *2.e.* of this appendix.

n.  <u>Incarcerated Members</u>.  A report of disability examination will be requested from the appropriate authorities in the case of a Service member imprisoned by civil authorities.  In the event no report, or an inadequate report, is received, documented efforts will be made to obtain an acceptable report.  If an examination is not received, disposition of the case will be in accordance with paragraph ~~2k~~ *2.k.* of this appendix.  The Service member will be advised of the disposition and that remedy rests with the respective Military Department Board for Correction of Military Records.

*DoDI 1332.18, August 5, 2014*

APPENDIX 5 TO ENCLOSURE 3

ADMINISTRATIVE DETERMINATIONS

1. ADMINISTRATIVE DETERMINATIONS FOR PURPOSES OF EMPLOYMENT UNDER FEDERAL CIVIL SERVICE

    a.  The PEB renders a final decision on whether an injury or disease that makes the Service member unfit or that contributes to unfitness was incurred in combat with an enemy of the United States, was the result of armed conflict, or was caused by an instrumentality of war during war.

    b.  These determinations pertain to whether a military retiree later employed in federal civil service is entitled to credit of military service toward a federal civil service retirement in accordance with sections 8332 and 8411 of Reference (d); in accordance with section 2082 of Reference (f); retention preference in accordance with section 3501 of Reference (d); credit of military service for civil service annual leave accrual in accordance with section 6303 of Reference (d); and exclusion of federal income taxation in accordance with section 104 of Reference (e).

        (1)  Incurred in Combat with an Enemy of the United States.  The disease or injury was incurred in the LOD in combat with an enemy of the United States.

        (2)  Armed Conflict.  The disease or injury was incurred in the LOD as a direct result of armed conflict (see Glossary) in accordance with sections 3501 and 6303 of Reference (d).  The fact that a Service member may have incurred a disability during a period of war, in an area of armed conflict, or while participating in combat operations is not sufficient to support this finding.  There must be a definite causal relationship between the armed conflict and the resulting unfitting disability.

        (3)  Instrumentality of War During a Period of War.  The injury or disease was caused by an instrumentality of war, incurred in the LOD during a period of war as defined in sections 101 and 302 of Title 38, U.S.C. (Reference (agal)), and makes the Service member unfit in accordance with sections 3501 and 6303 of Reference (d).  Applicable periods are:

            (a)  World War II.  The period beginning December 7, 1941, and ending December 31, 1946; and any period of continuous service performed after December 31, 1946, and before July 26, 1947, if such period began before January 1, 1947.

            (b)  Korean Conflict.  The period beginning June 27, 1950, and ending January 31, 1955.

            (c)  Vietnam Era.  The period beginning August 5, 1964, and ending May 7, 1975.

(d) Persian Gulf.  The period beginning August 2, 1990, through date to be prescribed by Presidential proclamation or law.


2.  DETERMINATIONS FOR FEDERAL TAX BENEFITS.  Disability evaluation includes a determination and supporting documentation on whether the Service member's disability compensation is excluded from federal gross income in accordance with Reference (e).  For compensation to be excluded, the Service member must meet the criteria in either paragraph 2a *2.a.* or 2b *2.b.* of this appendix.

a.  Status.  On September 24, 1975, the individual was a military Service member, including the RC, or was under binding written agreement to become a Service member.

(1)  A Service member who was a member of an armed force of another country on that date is entitled to the exclusion.

(2)  A Service member who was a contracted cadet of the Reserve Officers Training Corps on that date is entitled to the exclusion.

(3)  A Service member who separates from the Military Service after that date and incurs a disability during a subsequent enlistment is entitled to the exclusion.

b.  Combat Related.  This standard covers injuries and diseases attributable to the special dangers associated with armed conflict or the preparation or training for armed conflict.  A disability is considered combat-related if it makes the Service member unfit or contributes to unfitness and the preponderance of evidence shows it was incurred under any of the following circumstances.

(1)  As a Direct Result of Armed Conflict.  The criteria are the same as those in paragraph 1.b. of this appendix.

(2)  While Engaged in Hazardous Service.  Such service includes, but is not limited to, aerial flight duty, parachute duty, demolition duty, experimental stress duty, and diving duty.

(3)  Under Conditions Simulating War.  In general, this covers disabilities resulting from military training, such as war games, practice alerts, tactical exercises, airborne operations, and leadership reaction courses; grenade and live fire weapons practice; bayonet training; hand-to-hand combat training; rappelling; and negotiation of combat confidence and obstacle courses.  It does not include physical training activities, such as calisthenics and jogging or formation running and supervised sports.

(4)  Caused by an Instrumentality of War.  Occurrence during a period of war is not a requirement to qualify.  If the disability was incurred during any period of service as a result of wounds caused by a military weapon, accidents involving a military combat vehicle, injury or sickness caused by fumes, gases, or explosion of military ordnance, vehicles, or material, the criteria are met.  However, there must be a direct causal relationship between the instrumentality

of war and the disability.  For example, an injury resulting from a Service member falling on the deck of a ship while participating in a sports activity would not normally be considered an injury caused by an instrumentality of war (the ship) since the sports activity and not the ship caused the fall.  The exception occurs if the operation of the ship caused the fall.

3.  <u>RECOUPMENT OF BENEFITS</u>.  In accordance with sections 303a and 373 of Reference (~~af~~*ak*), when a Service member is retired, separated or dies as a result of a combat-related disability and has received a bonus, incentive pay, or similar benefit, the Secretary of the Military Department concerned:

    a.  Will not require repayment by the Service member or his or her family of the unearned portion of any bonus, incentive pay, or similar benefit previously paid to the Service member.

    b.  Will require the payment to the Service member or his or her family of the remainder of any bonus, incentive pay, or similar benefit that was not yet paid to the member, but to which he or she was entitled immediately before the death, retirement, or separation.

    c.  Will not apply paragraphs ~~3a~~*3.a.* and ~~3b~~*3.b.* of this appendix if the death or disability was the result of the Service member's misconduct.

4.  <u>DETERMINATION FOR RC MEMBERS WHO ARE TECHNICIANS AND DETERMINED UNFIT BY THE DES</u>.  In accordance with section 10216(g) of Reference (c), the record of proceedings for RC members who are technicians and determined unfit by the DES must include whether the member was determined unfit due to a combat-related event.

APPENDIX 6 TO ENCLOSURE 3

FINAL DISPOSITION

1. FINAL DECISION AUTHORITY

a. Secretary of Defense.  The Secretary of Defense, after considering the recommendation of the USD(P&R), approves or disapproves the appeal of any Service member found fit for duty by the PEB but determined unsuitable for continued service by the Secretary of the Military Department concerned for the same medical condition considered by the PEB.

b. USD(P&R).  The USD(P&R), after considering the recommendation of the ASD(HA), approves or disapproves the disability retirement of any general or flag officer or medical officer being processed for, scheduled for, or receiving non-disability retirement for age or length of service.

c. Secretaries of the Military Departments.  Except as stated in paragraphs ~~1a~~ *1.a.* and ~~b~~ *b* of this appendix, the Secretary of the Military Department concerned has the authority to make all determinations in accordance with this instruction regarding unfitness, disability percentage, and entitlement to disability severance and retired pay.

2. GENERAL RULES REGARDING DISPOSITION

a. Retirement

(1)  Except for Service members approved for permanent limited duty consistent with section 3 of this appendix, any Service member on active duty or in the RC who is found to be unfit will be retired, if eligible, or separated.  This general rule does not prevent disciplinary or other administrative separations from the Military Services.

(2)  Selected Reserve members with at least 15 but no more than 20 years of qualifying service pursuant to section 12732 of Reference (c) who are to be separated, may elect either separation for disability or early qualification for retired pay at age 60 pursuant to sections 12731 and ~~12731(b)~~ *12731b* of Reference (c).  However, the separation or retirement for disability cannot be due to the member's intentional misconduct, willful failure to comply with standards and qualifications for retention, or willful neglect, and cannot have been incurred during a period of unauthorized absence or excess leave.

b. Removal From the TDRL.  Service members determined fit as a result of TDRL re-evaluation will be processed as:

(1)  Appointment and/or Enlistment.  Upon the Service member's request, and provided he or she is otherwise eligible, the Secretary of the Military Department concerned will appoint

or enlist the Service member in the applicable grade and component as outlined in section 1211 of Reference (c).

(2) <u>Recall to Active Duty</u>

(a) <u>Regular Officers and Enlisted Members</u>.  Subject to their consent, regular officers and enlisted members will be recalled to duty, if they are otherwise eligible and were not separated in accordance with law or regulation at the time they were placed on the TDRL.  They will be deemed medically qualified for those conditions on which a finding of fit was determined.  Any new condition arising between DES evaluation and recall must meet the respective Military Service's medical standards for retention.

(b) <u>RC</u>.  Subject to their consent, RC officers, warrant officers, and enlisted members will be reappointed or reenlisted as a Reserve for service in their respective RC in accordance with section 1211 of Reference (c).  RC members determined fit by TDRL re-evaluation will not be involuntarily assigned to the Individual Ready Reserve.

(3) <u>Separation</u>.  In accordance with section 1210(f) of Reference (c), Service members required to be separated or retired for non-disability reasons at the time they were referred for disability evaluation and placed on the TDRL, if determined fit, will be separated or retired, as applicable.

(4) <u>Termination of TDRL Status</u>.  TDRL status and retired pay will terminate upon discharge, recall, reappointment, or reenlistment, as outlined in section 1211 of Reference (c).

(5) <u>Right to Apply for VA Benefits</u>.  A Service member may not be discharged or released from active duty due to a disability until he or she has been counseled on their right to make a claim for compensation, pension, or hospitalization with the VA.

3. <u>CONTINUANCE OF UNFIT SERVICE MEMBERS ON ACTIVE DUTY OR IN THE RESERVES</u>.  Upon the request of the Service member or upon the exercise of discretion based on the needs of the Military Departments, the Secretary of the Military Department concerned may allow unfit Service members to continue in a permanent limited-duty status, either active or reserve duty in the same or different rating or occupational specialty.  Such continuation may be justified by the Service member's service obligation or special skill and experience.  The Secretaries of the Military Department concerned may also consider transfer to another Military Service.

4. <u>TRANSITION BENEFITS</u>.  AC and RC members on active duty are entitled to the transition benefits established by Reference (~~acah~~) when being separated or retired for disability unless waived by the DoD or prohibited by federal law.

5. DISPOSITIONS FOR UNFIT SERVICE MEMBERS

   a. Permanent Disability Retirement. If the Service member is unfit, retirement for a permanent and stable compensable disability is directed pursuant to section 1201 or 1204 of Reference (c) either:

      (1)  When the total disability rating is at least 30 percent in accordance with the VASRD and the Service member has less than 20 years of service computed pursuant to section 1208 of Reference (c); or

      (2)  When the Service member has at least 20 years of service computed pursuant to section 1208 of Reference (c) and the disability is rated at less than 30 percent.

   b. Placement on the TDRL. Retirement is directed pursuant to section 1202 or 1205 of Reference (c) when the requirements for permanent disability retirement are met, except the disability is not stable and may be permanent.

   c. Separation With Disability Severance Pay

      (1)  Criteria. Separation is directed pursuant to section 1203 or 1206 of Reference (c) when the member is unfit for a compensable disability determined in accordance with the standards of this instruction, and the following requirements are met. Stability is not a factor for this disposition.

         (a)  The Service member has less than 20 years of service computed pursuant to section 1208 of Reference (c).

         (b)  The disability is rated at less than 30 percent.

      (2)  Service Credit

         (a)  Pursuant to section 1212 of Reference (c), a part of a year of active service that is 6 months or more is counted as a whole year, and a part of a year that is less than 6 months is disregarded.

         (b)  The Secretary of the Military Department concerned will credit members separated from the Military Services for a disability with a minimum of 3 years of service.

         (c)  The Secretary of the Military Department concerned will credit members separated from the Military Services for a disability incurred in the LOD in a designated combat zone tax exclusion area or incurred during the performance of duty in combat-related operations consistent with the criteria in paragraph ~~2b~~ *2.b.* of Appendix 5 to this enclosure with a minimum of 6 years of service.

         (d)  For the purposes of calculating active service for disability severance pay, the Secretary of the Military Department concerned will consider disabilities to be incurred in

combat-related operations when they are consistent with the criteria in paragraph ~~2b~~ *2.b.* of Appendix 5 to this enclosure.

(3) Transfer to Retired Reserve

(a)  Pursuant to section 1209 of Reference (c), RC members who have completed at least 20 qualifying years of Reserve service and who would otherwise be qualified for retirement may forfeit disability severance pay and request transfer to an inactive status list for the purpose of receiving non-disability retired pay at age 60.  The Secretary of the Military Department concerned may offer the member the option to transfer to the Retired Reserve.

(b)  When disability severance pay is accepted, the Service member forfeits all rights to receive retired pay pursuant to chapter 1223 of Reference (c) at age 60.  There are no provisions pursuant to Reference (c) to repay disability severance pay to then receive retired pay.

(4) Selected Reserve Early Qualification for Retired Pay.  ~~Pursuant to section 12731 of Reference (c),~~ RC members with at least 15 and less than 20 years of qualifying service who would otherwise be qualified for ~~nonregular~~ *non-regular* retirement may waive disability disposition and request early qualification for retired pay in accordance with ~~12731(b)~~ *section 12731b* of Reference (c).

d.  Separation Without Entitlement to Benefits.  Discharge is directed in accordance with section 1207 of Reference (c) when the Service member is unfit for a disability incurred as a result of intentional misconduct or willful neglect or during a period of unauthorized absence.

e.  Discharge Pursuant to Other Than Chapter 61 of Reference (c).  An unfit Service member is directed for discharge in accordance with other provisions of Reference (c) and Reference (~~ad~~*ai*) and DoDI 1332.30 (Reference (~~ah~~*am*)) when he or she is not entitled to disability compensation due to the circumstances when either:

(1)  The Service member is not entitled to disability compensation, but may be entitled to benefits under section 1174 of Reference (c)~~.~~*; or*

(2)  The medical ~~impairment~~ *condition* of an RC member is non-duty related and it disqualifies the member for retention in the RC.

f.  Revert with Disability Benefits.  Revert with disability benefits is used to return a retiree recalled to active duty who was:

(1)  Previously retired for disability.

(2)  Determined unfit during the period of recall.  For Service members previously retired for age or years of service, the compensable percentage of disability must be 30 percent or more to receive disability benefits.

## GLOSSARY

## PART I.  ABBREVIATIONS AND ACRONYMS

| | |
|---|---|
| AC | Active Component |
| ASD(HA) | Assistant Secretary of Defense for Health Affairs |
| ~~ASD(RA)~~ | ~~Assistant Secretary of Defense for Reserve Affairs~~ |
| *ASD(M&RA)* | *Assistant Secretary of Defense for Manpower and Reserve Affairs* |
| | |
| DAC | Disability Advisory Council |
| ~~DASD(WCP)~~ | ~~Deputy Assistant Secretary of Defense for Warrior Care Policy~~ |
| *DASD(HSP&O)* | *Deputy Assistant Secretary of Defense for Health Services Policy and Oversight* |
| DES | disability evaluation system |
| DoDD | DoD Directive |
| DoDI | DoD Instruction |
| D-RAS | disability rating activity site |
| | |
| ~~EDES~~ | ~~Expedited Disability Evaluation System~~ |
| | |
| FPEB | formal physical evaluation board |
| | |
| GC DoD | General Counsel of the Department of Defense |
| | |
| IDES | Integrated Disability Evaluation System |
| IDT | inactive duty training |
| IPEB | informal physical evaluation board |
| IT | information technology |
| | |
| LDES | Legacy Disability Evaluation System |
| LOD | line of duty |
| | |
| MEB | medical evaluation board |
| MTF | military treatment facility |
| | |
| PEB | physical evaluation board |

*DoDI 1332.18, August 5, 2014*

| PEBLO | physical evaluation board liaison officer |
|---|---|
| RC | Reserve Component |
| TDRL | temporary disability retired list |
| U.S.C. | United States Code |
| USD(P&R) | Under Secretary of Defense for Personnel and Readiness |
| VA | Department of Veterans Affairs |
| VASRD | Department of Veterans Affairs Schedule for Rating Disabilities |

PART II.  DEFINITIONS

Unless otherwise noted, these terms and their definitions are for the purpose of this instruction.

accepted medical principles.  Fundamental deductions, consistent with medical facts, that are so reasonable and logical as to create a virtual certainty that they are correct.  *The Service PEB will state with specificity the basis(es) for the conclusion.*

active duty.  Defined in ~~Joint Publication 1-02~~ *the DoD Dictionary of Military and Associated Terms* (Reference (~~aia~~*n*)).

acute.  Characterized by sharpness or severity.

armed conflict.  A war, expedition, occupation of an area or territory, battle, skirmish, raid, invasion, rebellion, insurrection, guerilla action, riot, or any other action in which Service members are engaged with a hostile or belligerent nation, faction, force, or terrorist.  Armed conflict may also include such situations as incidents involving a member while interned as a prisoner of war or while detained against his or her will in the custody of a hostile or belligerent force or while escaping or attempting to escape from such confinement, prisoner-of-war, or detained status.

catastrophic injury or illness.  A permanent, severely disabling injury, disorder, or disease incurred or aggravated in the LOD that compromises the ability to carry out the activities of daily living to such a degree that a Service member requires personal or mechanical assistance to leave home or bed or requires constant supervision to avoid physical harm to self or others.

clear and unmistakable evidence.  Undebatable information that the condition existed prior to military service or if increased in service was not aggravated by military service.  In other words, reasonable minds could only conclude that the condition existed prior to military service from a review of all of the evidence in the record.

compensable disability.  A medical condition that is determined to be unfitting due to disability and that meets the statutory criteria of chapter 61 of Reference (c) for entitlement to disability retired or severance pay.

competency board.  A board consisting of at least three medical officers or physicians (including one psychiatrist) convened to determine whether a member is competent (capable of making a rational decision regarding his or her personal and financial affairs).

DAC.  A DoD-only group that evaluates DES functions, identifies best practices, addresses inconsistencies in policy, discusses inconsistencies in law, addresses problems and issues in the administration of the DES, and provides a forum to develop and plan improvements.

DES.  The DoD mechanism for determining return to duty, separation, or retirement of Service members because of disability in accordance with chapter 61 of Reference (c).

disability.  Any ~~impairment~~ *condition* due to disease or injury, regardless of degree, that reduces or prevents an individual's actual or presumed ability to engage in gainful employment or normal activity.  The term "disability" or "physical disability" includes mental disease, but not such inherent defects as developmental or behavioral disorders.  A medical ~~impairment~~ *condition*, mental disease, or physical defect standing alone does not constitute a disability.  To constitute a disability, the medical ~~impairment~~ *condition*, mental disease, or physical defect must be severe enough to interfere with the Service member's ability to adequately perform his or her duties.

*duty-related medical conditions.  Conditions that were incurred or aggravated while the AC or RC Service member was performing duty.*

~~EDES.  A voluntary expedited process to authorize benefits, compensation, and specialty care to Service members who sustain catastrophic injuries or illnesses.~~

elective surgery.  Surgery that is not essential, especially surgery to correct a condition that is not life-threatening; surgery that is not required for survival.

final reviewing authority.  The final approving authority for the findings and recommendations of the PEB.

grave.  Very serious:  dangerous to life-used of an illness or its prospects.

IDES.  The joint DoD -VA process by which DoD determines whether ill or injured Service members are fit for continued military service and DoD and VA determine appropriate benefits for Service members who are separated or retired for disability.

instrumentality of war.  A vehicle, vessel, or device designed primarily for military service and intended for use in such service at the time of the occurrence or injury.

<u>LDES</u>.  A DES process by which DoD determines whether eligible wounded, ill, or injured Service members are fit for continued military service and determines appropriate benefits for Service members who are separated or retired for disability.  Service members processed through the LDES may also apply for veterans' disability benefits through the VA pre-discharge Benefits Delivery at Discharge or Quick Start programs, or upon attaining veteran status.

<u>LOD determination</u>.  An inquiry to determine whether an injury or illness was incurred when the Service member was in a military duty status.  If the Service member was not in a military duty status, whether it was aggravated by military duty; or whether it was incurred or aggravated due to the Service member's intentional misconduct or willful negligence.

<u>MEB convening authority</u>.  A senior medical officer, appointed by the MTF commander, who has detailed knowledge of standards of medical fitness and disposition of patients and disability separation processing and who is familiar with the VASRD.

<u>MEB process</u>.  For Service members entering the DES, the MEB conducts the medical evaluation on conditions that potentially affect the Service member's fitness for duty.  The MEB documents the Service member's medical condition(s) and history with an MEB narrative summary as part of an MEB packet.

medical ~~impairment~~ *condition*.  Any disease or residual of an injury that results in a lessening or weakening of the capacity of the body or its parts to perform normally, according to accepted medical principles.

<u>non-duty-related medical conditions</u>.  ~~Impairments~~ *Conditions* that were neither incurred nor aggravated while the *AC or RC Service* member was performing duty.

<u>office, grade, rank, or rating</u>

    <u>office</u>.  A position of duty, trust, and authority to which an individual is appointed.

    <u>grade</u>.  A step or degree in a graduated scale of office or military rank that is established and designated as a grade by law or regulation.

    <u>rank</u>.  The order of precedence among members of the Military Services.

    <u>rating</u>.  The name (such as "Boatswain's Mate") prescribed for Service members of a Military Service in an occupational field.

<u>PEBLO</u>.  The non-medical case manager who provides information, assistance, and case status updates to the affected Service member throughout the DES process.

<u>permanent limited duty</u>.  The continuation on active duty or in the Ready Reserve in a limited-duty capacity of a Service member determined unfit because of disability evaluation or medical disqualification.

presumption.  An inference of the truth of a proposition or fact reached through a process of reasoning and based on the existence of other facts.  Matters that are presumed need no proof to support them, but may be rebutted by evidence to the contrary.

proximate result.  A permanent disability the result of, arising from, or connected with active duty, annual training, active duty for training, or IDT, to include travel to and from such duty or remaining overnight between successive periods of IDT.  Proximate result is a statutory criterion for entitlement to disability compensation under chapter 61 of Reference (c) applicable to RC members who incur or aggravate a disability while performing an ordered period of military duty of 30 days or less.

retention standards.  Guidelines that establish medical conditions or physical defects that could render a Service member unfit for further military service and may be cause for referral of the Service member into the DES.

service aggravation.  The permanent worsening of a pre-Service medical condition over and above the natural progression of the condition.

service treatment record.  ~~A chronological record documenting the medical care, dental care and treatment received primarily outside of a hospital (outpatient), but may contain a synopsis of any inpatient hospital care and behavioral health treatment.~~  *The chronologic record of medical, dental, and mental health care received by Service members during the course of their military career.  It includes documentation of all outpatient appointments (i.e., without overnight admittance to a hospital, clinic, or treatment facility), as well as summaries of any inpatient care (discharge summaries) and care received while in a military theater of operations.  The service treatment record is the official record used to support continuity of clinical care and the administrative, business-related, and evidentiary needs of the DoD, the VA, and the individual.*